SECUNDINA PEREZ *v.* MOUNT SINAI HOSPITAL ET AL.
(3680)

BORDEN, DALY and BIELUCH, Js.

Argued March 18—decision released May 27, 1986

*Thomas William Mochnick,* for the appellant (plaintiff).

*Ernest J. Mattei,* with whom, on the brief, was *Paul D. Williams,* for the appellees (defendants).

DALY, J. The plaintiff instituted this medical malpractice action against the defendant Mount Sinai Hospital and the defendant physician, David Rothman, for improperly injecting her with a drug allegedly causing certain injuries. The trial court directed a verdict for the defendants and denied the plaintiff's motion to set aside the verdict.[1] The plaintiff has appealed from these actions of the trial court and from the granting of motions to exclude expert medical testimony and to exclude certain documentary evidence.

In 1975, the plaintiff, Secundina Perez, was sixteen years old and was receiving prenatal care at the Mount Sinai Hospital clinic from Nathan Fischer, a resident physician in the employ of the hospital. The plaintiff's child was born on September 7, 1975. In October, 1975, the plaintiff, thereafter, returned to the hospital for

---

[1] The transcript indicates that the trial court directed a verdict for the defendants. The plaintiff claims that the trial court granted the defendants' motion to dismiss while the judgment file indicates that the trial court denied the defendants' oral motion for a directed verdict. The judgment file should be corrected to reflect the directed verdict for the defendants.

a physical check-up and for birth control advice. On November 10, 1975, while at the hospital, she was examined and treated by Rothman, who injected her with the drug "Depo-Provera" as a birth control measure. The drug was an alternative to other birth control measures which were found to be inappropriate for the plaintiff. The plaintiff claims that, subsequent to this treatment, she experienced heavy vaginal bleeding which continued until December, 1976, when she was five months pregnant with her second child. She claimed to have also suffered from dizziness and nervousness. The plaintiff denies that she had been warned of the side effects of the drug and, had she been so warned, she claims she would never have consented to its injection.

The following brief procedural history of the case brings us to the ensuing appeal. This action was instituted by writ dated June 14, 1977. On April 19, 1978, the defendants served the plaintiff with interrogatories concerning whether she had employed an expert with regard to this action. On March 19, 1979, the plaintiff answered those interrogatories in the negative. On August 31, 1981, in response to a second set of interrogatories, filed on April 14, 1981, the plaintiff answered that no physician had diagnosed her condition as being causally related to the injection of Depo-Provera administered to her on November 10, 1975.

A third set of interrogatories, filed by the defendants on June 27, 1984, sought to elicit the name of each expert which the plaintiff intended to call, as well as the substance of their testimony. The plaintiff did not respond to these interrogatories. On July 23, 1984, the trial court, *Aspell, J.,* granted the defendants' motion to exclude expert testimony on the ground that the plaintiff failed to inform the defendants of the existence or identity of any expert witness. On August 29, 1984, the plaintiff subpoenaed Fischer to testify as an expert.

On August 30, 1984, just prior to the commencement of the jury selection, the defendants moved in limine to prohibit the plaintiff from seeking to elicit expert testimony as to standard of care or causation from "Dr. Fischer or any other doctor employed by Mt. Sinai now or in the past." During trial, Fischer was prohibited, not only from testifying to the standard of care and causation, but also as to the authoritative nature of the Physician's Desk Reference, a medical drug treatise.

On appeal, the plaintiff claims that the trial court erred (1) in excluding the expert testimony of Fischer concerning the issues of standard of care and causation, and (2) in prohibiting the introduction of the Physician's Desk Reference.

The plaintiff claims that she correctly answered the interrogatories of April 19, 1978, and April 14, 1981, because she, in fact, had not "employed" (in the sense of "hire") any expert at that time. The plaintiff further contends that it was not until the filing of the June 25, 1984 interrogatories that she was asked to identify any expert witness whom she intended to call. On July 23, 1984, the trial court granted the defendants' motion to exclude the testimony of any expert witness. In light of this, the plaintiff claims that she was not allowed thirty days, pursuant to Practice Book § 224, in which to respond to the interrogatories propounded on June 25, 1984. The plaintiff further claims there is a distinction between a treating physician and an independent medical expert.

The trial court correctly concluded that the use of the word "employ" in the interrogatories also connotes "to make use of." Over a period of approximately six years, the plaintiff never answered the interrogatories requesting the identity of any expert witness. "A party may through interrogatories require any other party to identify each person whom the other party expects

to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Practice Book § 220 (A) (1). Section 231 of the Practice Book further provides that "[i]f any party has failed to answer interrogatories or to answer them fairly . . . or has failed to comply with the provisions of Sec. 232[2] . . . the court may, on motion, make such order as the ends of justice require. Such orders may include the following: . . . (d) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence. . . . " (Footnote added.)

We need not consider the plaintiff's claim that she was not afforded, pursuant to Practice Book § 224, thirty days in which to respond to the third set of interrogatories. The plaintiff failed to answer the first two sets of interrogatories and, if she did "employ" an expert thereafter, she had a continuing duty, under Practice Book § 232, to disclose the identity of any expert witness whom she intended to call to testify. Further, the plaintiff never responded to the third set of interrogatories even after the thirty day period. The term "expert" may be extended to "all persons professionally acquainted with the science or practice in question." *Bryan* v. *Branford,* 50 Conn. 246, 248 (1882). Practice Book § 220 (A) (1) employs the term "expert witness" and does not draw a distinction between treating and independent experts.

---

[2] Practice Book § 232 provides in pertinent part: "If, subsequent to compliance with any request or order for discovery and prior to or during trial, a party discovers additional or new material or information previously requested and ordered subject to discovery or inspection or discovers that the prior compliance was totally or partially incorrect or, though correct when made, is no longer true . . . he shall promptly notify the other party, or his attorney, and file and serve . . . ."

"Such a 'cat and mouse' game was properly not condoned by the trial court." *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 106, 476 A.2d 1074 (1984). The discovery rules are designed to facilitate trial proceedings and to make a "trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." *United States* v. *Procter & Gamble,* 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958). "The court's decision on whether to impose the sanction of excluding the expert's testimony concerning causation rests within the sound discretion of the court." *Sturdivant* v. *Yale-New Haven Hospital,* supra, 107. Unless the trial court had abused a legal discretion, its action should not be disturbed; in making this analysis, we must afford the decision of the trial court great weight and allow every reasonable presumption to be made in favor of its correctness. *Timm* v. *Timm,* 195 Conn. 202, 206, 487 A.2d 191 (1985); *Dudas* v. *Ward Baking Co.,* 104 Conn. 516, 518, 133 A. 591 (1926). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." *Timm* v. *Timm,* supra, 207; *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 611, 153 A.2d 463 (1959); *Sturdivant* v. *Yale-New Haven Hospital,* supra, 108. "The court's conclusion, that the consequences of the plaintiff's failure fully and fairly to disclose, despite being given ample opportunity to do so [over a period of six years], should fall upon the plaintiff rather than upon the defendants, was not an abuse of discretion. To hold otherwise would unfairly deny, under the circumstances of this case, the defendants the opportunity to prepare for or challenge the proposed testimony concerning causation." *Sturdivant* v. *Yale-New Haven Hospital,* supra.

Fischer was not allowed to testify as to the authoritative nature of the 1975 Physician's Desk Reference, and the trial court refused to admit it into evidence. "Under Connecticut law, if a medical treatise is recognized as authoritative by an expert witness and if it influenced or tended to confirm his opinion, the relevant portions thereof may be admitted into evidence in the exercise of the trial court's discretion." *Cross* v. *Huttenlocher*, 185 Conn. 390, 395, 440 A.2d 952 (1981); *Kaplan* v. *Mashkin Freight Lines, Inc.*, 146 Conn. 327, 331, 150 A.2d 602 (1959). "[T]he trial court's rulings excluding certain medical texts offered by the plaintiff from evidence cannot be disturbed. . . . [T]he court declined to admit the texts because of the danger that the jury would be confused or misled by examining the texts unaided by expert testimony." *Cross* v. *Huttenlocher*, supra, 397. Even if the Physician's Desk Reference were recognized by Fischer as being authoritative, it could not be shown that it influenced or tended to confirm his opinion since he was not permitted to give an opinion.

In bringing an action in medical malpractice, the plaintiff must present medical expert testimony to establish that the defendants' treatment and care fell short of the required standard and that the breach proximately caused the plaintiff's injury. *Hurley* v. *Johnston*, 143 Conn. 364, 367, 122 A.2d 732 (1956). "In Connecticut, both breach of the standard of care and proximate cause must be proved by expert testimony." *Campbell* v. *Pommier*, 5 Conn. App. 29, 32, 496 A.2d 975 (1985). "It is well settled that the plaintiff cannot prevail unless there was positive evidence of an expert nature from which the jury could reasonably conclude that the defendant was negligent, except where there

is manifest such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence that the testimony of an expert is not necessary." *Puro* v. *Henry,* 188 Conn. 301, 305, 449 A.2d 176 (1982); *Console* v. *Nickou,* 156 Conn. 268, 273–74, 240 A.2d 895 (1968). The circumstances here do not rise to the level of negligence in *Console,* where the plaintiff, after the caesarean delivery of her third child, experienced pain which persisted until the removal of a suture needle approximately fifteen months later. In this case, the plaintiff testified that before being administered the Depo-Provera injection, she experienced some vaginal bleeding in November, 1975, and heavy vaginal bleeding prior to a miscarriage in 1974. Furthermore, during her medical treatment in 1976, the plaintiff reported no uterine or vaginal problems and provided no explanation for the occasions on which the bleeding stopped.

Our Supreme Court upheld a directed verdict in *Grody* v. *Tulin,* 170 Conn. 443, 365 A.2d 1076 (1976), where, in a wrongful death action, the opinion of a layman on the subject of linking the cause of cancer to a traumatic injury was considered mere speculation without the introduction of expert evidence. Id., 451. " '[Such opinions] cannot support causal connection; that must rest upon the proven facts. The plaintiff failed to sustain the burden of making such causal connection and furnished the jury no logical basis for making the inference they drew.' " Id. "In Connecticut, a directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." *Spencer* v. *Good Earth Restaurant Cor-*

*poration,* 164 Conn. 194, 198, 319 A.2d 403 (1972); *Desnoyers* v. *Wells,* 4 Conn. App. 666, 668, 496 A.2d 237 (1985).

On reviewing the action of the trial court, in first directing and thereafter refusing to set aside the verdict, we find no abuse of discretion.

There is no error.

In this opinion the other judges concurred.