[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT ST. FRANCIS HOSPITAL MOTION FOR SUMMARY JUDGMENT
On June 2, 1988, the plaintiff, David Bourquin, Administrator of the Estate of his wife, Gayle L. Bourquin, filed a five-count complaint against B. Braun Melsungen, AG ("Braun Melsungen") a German corporation, Tri Hawk International ("Tri Hawk"), a Canadian corporation, Saint Francis Hospital and Medical Center ("Saint Francis"), and Stephan C. Lange, M.D. ("Lange"), seeking damages for the illness and death of Gayle Bourquin, which allegedly resulted from the use of Lyodura, human dura mater tissue, in the course of brain surgery performed upon her in 1985.
The plaintiff alleged that Braun Melsungen processed and marketed Lyodura and that Tri Hawk distributed and sold Lyodura. The plaintiff alleged that Saint Francis purchased the Lyodura from Braun Melsungen and Tri Hawk, and that Lange, a neurosurgeon, while performing brain surgery upon Gayle Bourquin at Saint Francis, replaced some of the dura mater around her brain with a graft of the Lyodura. The plaintiff alleged that his wife's illness and death resulted from Cruetzfeld-Jakob disease, which she contracted from the Lyodura graft. In the first and second counts, the plaintiff alleged that Braun Melsungen and Tri Hawk, respectively, are liable and legally responsible for his wife's illness and CT Page 6794 death pursuant to Connecticut's Product Liability Act. General Statutes 52-572m et seq. In the third and fourth counts, the plaintiff alleged that his wife's illness and death were caused by the negligence of Saint Francis and Lange, respectively. The plaintiff alleged in the fifth count that the acts and conduct of Braun Merlsungen and Tri Hawk constituted unfair or deceptive acts or practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes 42-110b et seq.
On September 13, 1988, this court, Hennessey, J., granted Braun Melsungen's motion to dismiss the first and fifth counts as to Braun Melsungen on the ground that the plaintiff had failed to serve the company in compliance with the requirements of the Hague Service Convention.
On May 18, 1989 and September 20, 1990, the plaintiff filed four-count revised complaints. In the September 20, 1990 revised complaint, plaintiff asserts product liability and CUTPA causes of action against Tri Hawk in the first and fourth counts, respectively. In the second and third counts, the plaintiff alleges negligence causes of action against Saint Francis and Lange, respectively. In the second count of the September 20, 1990 revised complaint, the plaintiff alleges that his wife's illness and death were caused by the negligence of Saint Francis and its agents, servants and employees, in that
 They failed properly to investigate the source of the commercially prepared human dura mater material; in that they failed to investigate the procedures under which said commercially prepared human tissue was obtained, processed and put into the stream of commerce; in that they failed to purchase said commercially prepared human tissue in accordance with standards for tissue banking; in that they failed to purchase said commercially prepared human tissue from an American source which was subject to the standards of the American Association of Tissue Banks; in that they failed to handle, store and dispense said tissue in accordance with said standards, and of due care; in that CT Page 6795 they failked [failed] to exercise the care of reasonably prudent persons under the circumstances.
(September 20, 1990 Revised Complaint, Second Count, para. 18).
In the third count of the September 20, 1990 revised complaint, the plaintiff alleges that his wife's illness and death were caused by the negligence of Lange in that
 he failed properly to investigate the source of the commercially prepared human dura mater material; in that he failed to investigate the procedures under which said commercially prepared human tissue was obtained, processed and put into the stream of commerce; in that he failed to ascertain whether defendant Saint Francis investigated in any way concerning the source or quality of the human tissue provided him for the surgery; and in that he failed to ascertain whether defendant Saint Francis purchased, handled, stored, and dispensed the human tissue in accordance with standards of the American Association of Tissue Banks.
(September 20, 1990 Revised Complaint, Third Count, para. 18).
On March 4, 1991, Saint Francis filed an answer in the September 20, 1990 revised complaint and a five count cross-claim against Tri Hawk. On June 19, 1992, the plaintiff claimed this case to the jury trial list.
On September 2, 1992, Lange filed a motion to preclude expert testimony on the ground that the plaintiff had not identified any expert to testify as to the standard of care in his care and treatment of the plaintiff's wife within sixty days from the date the case was claimed to the trial list as required by Practice Book 220(D). On September 8, 1992, Saint Francis filed a motion to preclude expert testimony in which it stated that it joins Lange's motion to preclude expert testimony filed September 2, 1992. On CT Page 6796 September 14, 1992, the court, Hennessey, J., denied Lange's motion to preclude expert testimony with the notation "all present" and the order that the plaintiff will have until December 14, 1992 to disclose experts.
On January 7, 1993, Saint Francis filed a motion to preclude the plaintiff from introducing into evidence at the time of trial any testimony from experts not disclosed on or before December 14, 1992. On February 10, 1993, the plaintiff filed a motion for permission to disclose Dr. Guy Owens, a neurosurgeon, as an expert witness, accompanied by an affidavit by the plaintiff's counsel. On February 16, 1993, Saint Francis filed an "Objection to and Motion to Preclude Plaintiff's Disclosure of Experts Dated February 8, 1993," accompanied by a memorandum of law. The plaintiff's counsel filed an additional affidavit dated February 18, 1993 in support of the motion for permission to disclose an expert witness detailing his efforts to procure an expert to testify as to the standard of care.
On February 22, 1993, the court, Hennessey, J., with all counsel present, granted the motion to preclude expert testimony filed by Saint Francis on January 7, 1993, and denied the plaintiff's motion for permission to disclose an expert from the bench.
On March 3, 1993, Saint Francis filed a motion for permission to file a motion for summary judgment. On March 8, 1993, Saint Francis filed a motion for summary judgment, accompanied by a memorandum of law in support thereof. Saint Francis' motion for permission was granted by the court, Aronson, J., on March 16, 1993. Saint Francis moves for summary judgment on the ground that the plaintiff failed to disclose, in accordance with the deadline imposed by the court, any expert to testify as to the applicable standard of care in this case, that Saint Francis deviated from that standard of care, and that the deviation caused the plaintiff's wife's injuries and death. Saint Francis contends that it is entitled to summary judgment on the plaintiff's revised complaint because without such expert testimony the plaintiff cannot make out a prima facie case.
March 8, 1993, the plaintiff filed a request to amend his revised complaint to add new allegations of negligence against defendants Saint Francis and Lange. The plaintiff CT Page 6797 sought to add new allegations in paragraph eighteen of both the second and third counts that Gayle Bourquin's illness and death were caused by Saint Francis and Lange, respectively, "in that the box in which the Lyodura came bore the designations `For Investigational Use Only' and `For Use in Canada Only;' [and] in that [each] defendant's use of Lyodura when its packaging bore [these] designations . . . manifests gross want of care and skill." (Proposed Revised Complaint dated March 4, 1993 attached to Request to Amend, Second and Third Counts, para. 18). On March 12, 1993, Saint Francis filed an objection to the plaintiff's request to amend.
On March 17, 1993, the plaintiff filed a "Motion for Reconsideration and Articulation" of the court's denial of his motion for permission to disclose an expert witness. The court, Hennessey, J., with all counsel present, marked the motion "off" with the notation "reasons for original ruling on the record."
On March 19, 1993, the plaintiff filed a memorandum in opposition to Saint Francis' motion for summary judgment accompanied by several documentary exhibits. On March 26, 1993, Saint Francis filed a reply brief accompanied by several documentary exhibits.
On April 5, 1993, this court, Hennessey, J., with all counsel present, denied from the bench the plaintiff's request to amend his complaint. The court held, inter alia, that the addition of such allegations at this late stage in the action substantially changed the nature of the plaintiff's claims and thus would be prejudicial to the defendants.
Summary judgment is appropriate when the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book 384) see Gurliacci v. Mayer, 218 Conn. 531, 562,590 A.2d 914 (1991). A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. Practice Book 380. The party moving for summary judgment bears the burden of proving the absence of a dispute CT Page 6798 as to any material fact. Nolan v. Borkowski, 206 Conn. 495,500, 538 A.2d 1031 (1988).
Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Daily v. New Britain Machine Co., 200 Conn. 562, 568, 512 A.2d 893 (1986). It is not enough for the opposing party to assert the existence of a disputed issue. Id., 569.
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Catz v. Rubenstein, 201 Conn. 39, 49,513 A.2d 98 (1986); see Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). The function of the trial court in summary judgment proceedings is not to decide issues of material fact but rather to determine whether any such issues exist. Nolan v. Borkowski, supra. The test is whether a party would be entitled to a directed verdict on the same facts. Batick v. Seymour,186 Conn. 632, 647, 443 A.2d 471 (1982); see United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 380,260 A.2d 596 (1969).
Saint Francis argues that because the plaintiff's claim against it is medical malpractice, the plaintiff must establish thorough expert testimony the applicable standard of care and that Saint Francis' conduct deviated from that standard of care. Saint Francis asserts that it is entitled to summary judgment in its favor on the second count because the plaintiff has been precluded from introducing expert testimony and thus will not be able to prove that Saint Francis deviated from the applicable standard of care and that such deviation proximately caused the injuries and death of the plaintiff's wife.
The plaintiff argues that expert testimony is not mandatory if the medical condition or claim is obvious or common in everyday life. The plaintiff asserts that his claim is not a malpractice claim but rather is one of "ordinary negligence concerning the selection and use of graft material that should not have been used as [Saint Francis] permitted it to be used," and thus "is subject to proof of the standard of care owed by a reasonably prudent CT Page 6799 person under the particular facts and circumstances of the case." (Plaintiff's memorandum, p. 7). The plaintiff argues that the scenario in this case is not so technical or complex that a lay jury would not be able to apply the standard of care of a reasonably prudent person under the circumstances unless aided by expert testimony.
Practice Book 220 provides, in relevant part:
 Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Sec. 218 and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
 (A)(1) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. . . .
 (D) In addition to and notwithstanding the provisions of subsections (A), (B) and (C) of this section, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. Each defendant shall disclose the names of his or her experts in like manner within 120 days from the date the case is claimed to a trial list. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if CT Page 6800 an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown.
Practice Book 232 provides:
 If, subsequent to compliance with any request or order for discovery and prior to or during trial, a party discovers additional or new material or information previously requested and ordered subject to discovery or inspection or discovers that the prior compliance was totally or partially incorrect or, though correct when made, is no longer true and the circumstances are such that a failure to amend the compliance is in substance a knowing concealment, he shall promptly notify the other party, or his attorney, and file and serve in accordance with Sec. 120 a supplemental or corrected compliance.
Practice Book 231 provides, in relevant part, that:
 If any party has failed to answer interrogatories or to answer them fairly . . . or has failed to respond to requests for production . . . or has failed to comply with the provisions of Sec. 232, . . . .the court may, on motion, make such order as the ends of justice require.
Such orders may include the following:
 . . . (d) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence. . . .
 The failure to comply as described in this section may not be excused on the ground that the discovery is objectionable unless written objection as authorized CT Page 6801 by Secs. 222, 226, and 229 has been filed.
The trial court
 has discretion to impose sanctions on parties who fail to answer interrogatories requesting disclosure of any expert witness the parties intend to call. Practice Book 231. The sanctions imposed may include exclusion of any expert testimony at trial. Practice Book 231(d); Separack v. Solaz, 17 Conn. App. 684, 693, 556 A.2d 175, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989); Perez v. Mount Sinai Hospital, 7 Conn. App. 514, 518, 509 A.2d 552 (1986).
Gemme v. Goldberg, 31 Conn. App. 527,535, ___ A.2d ___ (1993).
In this case, the plaintiff disclosed Dr. James L. Handler, a state epidemiologist, in response to interrogatories propounded by Lange in June, 1988, but never provided any detail on the subject matter or substance of his expected testimony. In a "Notice of Supplemental Compliance" dated November 24, 1992, the plaintiff named Dr. James Prichard, a neurologist, and Dr. Arthur Wright, an economist. With respect to Prichard, the plaintiff stated that the subject matter upon which Prichard would testify included Gayle Bourquin's medical history, her medical condition prior to her death based upon his personal medical examination of her cause of death, and his expert analysis of her medical records and reports filed by other attending physicians. The plaintiff disclosed that the substance of the facts and opinions to which Prichard was expected to testify included his opinion, based upon medical probability, that Gayle Bourquin contracted Cruetzfeld-Jakob disease from an infectious Lyodura dura mater graft used in the course of surgery performed by Lange at Saint Francis in April, 1985, and the disease led to her death in 1987. The plaintiff disclosed Wright as an expert to testify as to Gayle Bourquin's lost earning capacity. The plaintiff did not timely disclose an expert witness to testify as to the applicable standard of care and breach of the standard of care by Saint Francis within the extended time period allowed CT Page 6802 by this court, and this court has, in its discretion, precluded the plaintiff from disclosing any further experts.
"`In order to prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury.'" Williams v. Chameides, 26 Conn. App. 818,822, 603 A.2d 1211 (1992), quoting Samose v. Hammer-Passero Norwalk Chiropractic Group, P.C., 24 Conn. App. 99, 102-03,586 A.2d 614, cert. denied, 218 Conn. 903, 588 A.2d 1079
(1991). "In bringing an action in medical malpractice, the plaintiff must present medical expert testimony to establish that the defendant's treatment and care fell short of the required standard and that the breach proximately caused the plaintiff's injury." Perez v. Mount Sinai Hospital, supra, 520. "`In Connecticut, both breach of the standard of care and proximate cause must be proved by expert testimony." Id., quoting Campbell v. Pommier, 5 Conn. App. 29, 32,496 A.2d 975 (1985). "[E]xpert testimony is necessary to establish the standard of proper professional skill or care on the part of a physician, surgeon or other similar practitioner because `in most such cases a layman does not and cannot have the requisite knowledge as to whether the proper treatment was given, procedure followed, or care used.'" Shelnitz v. Greenberg, 200 Conn. 58, 66,509 A.2d 1023 (1986), quoting Chubb v. Holmes, 111 Conn. 482, 486,150 A.2d 516 (1930). "`It is well settled that the plaintiff cannot prevail unless there was positive evidence of an expert nature from which the jury could reasonably conclude that the defendant was negligent, except where there is manifest such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence that the testimony of an expert is not necessary.'" Perez v. Mount Sinai Hospital, supra, 520-21, quoting Puro v. Henry,188 Conn. 301, 305, 449 A.2d 176 (1982); see also Guzze v. New Britain General Hospital, 16 Conn. App. 480, 485,547 A.2d 944, cert. denied, 209 Conn. 823, 552 A.2d 430 (1988).
In the present case, the plaintiff alleges, not that Saint Francis, its agents, servants or employees were negligent in performing the surgery upon the plaintiff's wife, but that Saint Francis failed to properly investigate the source of the Lyodura or the procedures under which it was obtained and processed. The plaintiff also alleges that CT Page 6803 Saint Francis failed to purchase, handle, store and dispense the Lyodura in accordance with the standards of the American Association of Tissue Banks and failed to purchase the Lyodura from an American source which was subject to the standards of the American Association of Tissue Banks. Contrary to the plaintiff's assertion, the proof of such claims of negligence are still within the area of medical malpractice and would require expert testimony. The standard of care with respect to the investigation and handling of human dura mater tissue by a hospital prior to surgery and the standard of American Association of Tissue Bank are not an area with which a jury would be knowledgeable or familiar.
 Malpractice is commonly defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . ." Webster, New Third International Dictionary; Black's Law Dictionary (5th Ed. 1979): see Camposano v. Claiborn, [2 Conn. Cir. Ct. 135, 196 A.2d 129 (1963)].
(Footnote omitted.) Barnes v. Schlein, 192 Conn. 732, 735,473 A.2d 1221 (1984).
The gravamen of the plaintiff's complaint with respect to Saint Francis is that it did not meet the standard of care required of hospitals purchasing human dura mater tissue and supplying it for use in surgery. The allegations of the plaintiff's complaint revolve around the conduct of the hospital, its agents, servants or employees, in its capacity or function as a hospital providing medical care and treatment to patients such as the plaintiff's wife. As such, the plaintiff's claims are not allegations of "ordinary negligence," as the plaintiff asserts. A claim "concerning the selection and use of graft material that should not have been used as [Saint Francis] permitted it to be used," involves determinations of whether Saint Francis, its agents, servants or employees exercised proper medical judgment under CT Page 6804 the circumstances surrounding the use of Lyodura in the treatment and care of the plaintiff's wife. The fact that the plaintiff has not alleged that the surgery upon his wife at Saint Francis was negligently performed does not transform this case from a medical malpractice action into an "ordinary negligence" claim against Saint Francis because the plaintiff's allegations involve an alleged failure by Saint Francis, its agents, servants or employees, to exercise proper medical judgment in failing to investigate the source of the Lyodura that Lange used during surgery and failing to comply with standards of the American Association of Tissue Banks.
 In the ordinary action for negligence the jury can apply, unaided by experts, the standard of care of the reasonably prudent person under the circumstances. Levett v. Etkind, 158 Conn. 567, 573, 265 A.2d 70
(1969). This standard does not apply to an action where laymen cannot be expected to know the requirements of proper care in the usual case. Id., 573-74.
Todd v. Malafronte, 3 Conn. App. 16, 19, 484 A.2d 463 (1984).
A jury composed of laymen would not be familiar with the standard of care applicable to neurosurgeons in investigating or selecting graft material to be used by neurosurgeons during brain surgery conducted at the hospitals. Expert testimony in this case would be necessary to establish the applicable standard of care with respect to the plaintiff's allegations of negligence. For example, that expert testimony would be necessary to establish whether hospitals investigate the sources of the graft materials they purchase for use during surgery, and, if so, what the appropriate practices or procedures are for investigation, and whether Saint Francis complied with those practices or procedures. Such a claim of negligence in the purchase and investigation and use of graft material for use in brain surgery is not "obvious or common in everyday life" as the plaintiff claims, such that a jury could determine the applicable standard of care and whether Saint Francis breached that standard of care in the absence of expert testimony.
The order precluding expert testimony would also CT Page 6805 apply to Lange's testimony. See Gemme v. Goldberg, supra, 534-36. Because the plaintiff has been precluded from offering any expert testimony against Saint Francis beyond the experts he has already disclosed, the plaintiff would be unable to use Lange's testimony as expert testimony against Saint Francis. Id.
Because proof of the plaintiff's claims against Saint Francis require expert testimony as to the applicable standard of care and breach of that standard of care, and the plaintiff has been precluded from disclosing any further expert(s) who would testify on those subjects, Saint Francis's motion for summary judgment as to the second count of the plaintiff's revised complaint is granted.
M. Hennessey, J.