JOSEPH CARON *v.* FREDERICK G. ADAMS, COMMISSIONER OF HEALTH SERVICES, ET AL.
(11664)

DUPONT, C. J., FOTI and HEIMAN, Js.

Argued October 5, 1993—decision released March 8, 1994

*George E. Mendillo,* for the appellant (plaintiff).

*Robert E. Kiley,* with whom was *Lois B. Tanzer,* for the appellee (defendant Newington Children's Hospital).

*Elizabeth A. O'Dea,* assistant attorney general, with whom were *Thomas J. Ring,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellee (defendant commissioner of health services).

FOTI, J. The plaintiff appeals from the judgment rendered for the defendants, following the granting of a motion for judgment notwithstanding the verdict filed by the defendant Newington Children's Hospital (hospital), and the granting of a motion to dismiss filed by the defendant Frederick G. Adams, commissioner of health services (health services). The plaintiff initially brought this action against the named defendant, the defendant hospital and the department of children and youth services (DCYS) (now the department of children and families).[1] The plaintiff alleged, inter alia, that the hospital failed to obtain consent, informed or otherwise, from his legal guardian, the commissioner of DCYS. The plaintiff alleged that health services breached its

---

[1] The unopposed motion by DCYS to dismiss the complaint was granted by the trial court on August 11, 1987, on the grounds of sovereign immunity and failure to exhaust administrative remedies.

statutory duties to provide services to crippled children. The claims against the hospital were tried to a jury and the claims against health services were tried to the court.

During the trial, the defendant hospital orally moved for a directed verdict claiming that the action was barred by the statute of limitations. The court reserved decision. The jury rendered a verdict for the plaintiff in the amount of $500,000. The court granted the hospital's motion for judgment notwithstanding the verdict on the ground that the two year statute of limitations barred the plaintiff's action as a matter of law. The trial court filed a memorandum of decision on June 26, 1992, finding that the plaintiff and DCYS had to have discovered any harm by January, 1985, but did not commence the action until June 1, 1987. Thereafter, the trial court issued a separate memorandum of decision dated June 26, 1992, ordering the dismissal of the case against health services for failure to make out a prima facie case and because the case was barred by the statute of limitations.

The plaintiff appeals claiming that the trial court improperly (1) held that the plaintiff's cause of action was barred by the statute of limitations, (2) precluded the plaintiff from calling expert witnesses at trial, (3) dismissed the claim against health services without reaching the issue of whether health services may be held liable for the acts or omissions of the hospital, and (4) denied the plaintiff's application for relief from payment of fees, costs and expenses pursuant to Practice Book § 4017. We reverse in part and affirm in part.

The following facts are relevant to this appeal. The plaintiff, Joseph Andrew Caron, was born Maurice Joseph Tancreto on November 3, 1967. On January 16, 1968, he was adjudicated a neglected child and was committed to the custody of the commissioner of DCYS.

He was placed in the foster care of Joseph and Johanna Caron,[2] where he remained throughout his minority.

The plaintiff was diagnosed with scoliosis at age four and became a patient of the hospital. During the years that he was a patient, he was examined periodically by John Banta, a staff orthopedic surgeon at the hospital, in addition to other members of the hospital staff including psychologists. The plaintiff's curvature of the spine was treated with various brace treatments until he was twelve years old. The scoliosis was found to be responding well and brace treatment was discontinued in October, 1980. Thereafter, further examinations conducted by the hospital revealed a progression of the curvature of the spine. By August, 1983, the curvature had worsened to the point that surgery was deemed advisable.

From September, 1981, to February, 1984, Salvatore Luciano was the plaintiff's caseworker from DCYS. On October 26, 1983, a meeting was held with officials from DCYS, including Luciano, the hospital, the plaintiff, and Johanna Caron to discuss corrective surgery. Banta recommended surgical fusion of the spine which intended to correct the curvature by 50 percent and to prevent further progression. No decision as to a course of treatment was reached at the meeting. The plaintiff and his foster mother were to take the matter under advisement. Luciano testified that Banta had said at the meeting that surgery could not be attempted until the plaintiff achieved skeletal maturity. Banta denied having made such a statement.

In February, 1984, Paul Kukish, another DCYS caseworker, was appointed to the case. Kukish did not become aware that surgery had been proposed until September, 1984. On September 10, 1984, the plaintiff was admitted to the hospital for diagnostic evaluation. It was determined that the scoliosis had progressed to

---

[2] The elder Joseph Caron died in 1979.

a critical point and surgery was again recommended. The plaintiff refused to submit to surgery because of the risks that he thought were involved.[3] He checked out of the hospital against medical advice on September 14, 1984. The plaintiff did not return to the hospital as a patient.

In October, 1984, a staff member of the hospital's child protection unit wrote to the clerk of the Superior Court requesting that a judge review the plaintiff's case. On October 24, 1984, and June 26, 1985, hearings were held in the Superior Court for Juvenile Matters. All pertinent parties were present including the plaintiff who was represented by an attorney in opposing the surgery.[4] After the first hearing, the plaintiff was ordered to visit Boston Children's Hospital for a second opinion. The diagnosis and recommendations of Boston Children's Hospital were substantially the same as those of the Newington hospital. Ultimately, the trial court refused to compel the plaintiff, then seventeen,[5] to undergo surgery against his will.

The plaintiff contended at the trial against the hospital that the hospital and health services were negligent in not ensuring the early treatment and correction of his scoliosis. In failing to do so, he claims that they allowed the curvature of his spine to progress to the point where it could not be fully corrected and partial correction could be accomplished only by surgery and at great risk to the plaintiff.

## I

We deal first with the issue of the statute of limitations, which involves both defendants, and then take

---

[3] The risks associated with this surgery included, among others, paralysis and cardiac and pulmonary complications.

[4] There is no indication in the record that this attorney was officially appointed as guardian ad litem for the plaintiff, but appears to have been appointed by the court for the hearings only.

[5] The plaintiff reached majority on November 3, 1985.

in turn the issues applicable to each defendant. The plaintiff first contends that the trial court improperly determined that his claims were barred by the statute of limitations pursuant to General Statutes § 52-584.[6] It is undisputed that § 52-584 applies to this case. "In Connecticut, a cause of action accrues when a plaintiff suffers actionable harm. *Catz* v. *Rubenstein,* 201 Conn. 39, 43, 513 A.2d 98 (1986). Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury. Id.; see *Lambert* v. *Stovell,* 205 Conn. 1, 6, 529 A.2d 710 (1987)." *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 521, 562 A.2d 1100 (1989). The trial court in this case found that the injury to the plaintiff should reasonably have been discovered by, at the latest, January, 1985. Because the plaintiff initiated suit on June 1, 1987, the trial court concluded that the suit was barred by the two year statute of limitations.

It is well settled in Connecticut that the statute of limitations applies with full force against infants. *Lametta* v. *Connecticut Light & Power Co.,* 139 Conn. 218, 223, 92 A.2d 731 (1952); *Lopez* v. *United Nurseries, Inc.,* 3 Conn. App. 602, 605, 490 A.2d 1027 (1985). It has long been the established practice that a minor may bring a civil action only through a guardian or next friend. *Collins* v. *York,* 159 Conn. 150, 153, 267 A.2d 668 (1970); *Lametta* v. *Connecticut Light & Power Co.,*

---

[6] General Statutes § 52-584 provides in pertinent part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

supra, 220. In addition, "[a]n infant . . . cannot be presumed to know that legal redress is available for an injury caused by the negligence of another. Thus . . . the knowledge of a parent or guardian that his or her child has suffered an actionable injury must be imputed to that child." *Burns* v. *Hartford Hospital,* 192 Conn. 451, 458 n.4, 472 A.2d 1257 (1984).

The plaintiff in this case had been committed to the guardianship of the commissioner of DCYS pursuant to General Statutes § 17a-92.[7] Therefore, for statute of limitations purposes, the defendants argue that the knowledge of the plaintiff's guardian, DCYS, would generally be imputed to the plaintiff. However, "the purpose of providing representation is to ensure that the legal disability imposed will not undermine adequate protection of a ward's interest." *Cottrell* v. *Connecticut Bank & Trust Co.,* 175 Conn. 257, 264, 398 A.2d 834 (1978).[8] "The law does not deprive a person adjudicated incompetent of access to the courts in order to seek redress; rather, provision is made to ensure that such interests are well represented. *Kirwan* v. *State,* 168 Conn. 498, 502, 363 A.2d 56 [1975]." *Cottrell* v. *Connecticut Bank & Trust Co.,* supra, 261–62.

---

[7] General Statutes § 17a-92 provides in pertinent part: "Effective at 12:01 a.m., April 1, 1975, the commissioner of children and youth services shall assume, and the commissioner of social services shall cease to have guardianship, as defined in subsection (a) of section 17a-90, over all children who on that date, by virtue of any order of the juvenile court or superior court, are wards of or committed to the state of Connecticut or the commissioner of social services. The commissioner of children and youth services shall thereupon assume all liability and responsibility for such children; and exercise such powers, duties and functions regarding such children, as the commissioner of social services in his capacity as guardian may now or hereafter have . . . ."

General Statutes § 17a-90 (a) provides: "The commissioner of children and youth services shall have general supervision over the welfare of children who require the care and protection of the state."

[8] Although *Cottrell* v. *Connecticut Bank & Trust Co.,* 175 Conn. 257, 264, 398 A.2d 834 (1978), involved the interests of an incompetent, that case stated that "legal disability of an incompetent is analogous to that of a minor. See *Brown* v. *Eggleston,* 53 Conn. 110, 119, 2 A. 321 [1885]."

The DCYS guardianship is a guardianship of the person.[9] The plaintiff argues that personal injury damages are a property right, and, therefore, DCYS, as guardian of the person and not of the estate,[10] would not be able to bring a suit on behalf of the plaintiff. We need not decide this issue because, in this case, the interests of DCYS may have been adverse to those of the plaintiff. The plaintiff, in fact, sought redress for injury arising out of the actions and inactions of DCYS and its agents. In addition, the hearings held in the Superior Court for Juvenile Matters in October, 1984, and June, 1985, regarding the advisability of corrective surgery and in which the plaintiff opposed the surgery, suggest that some conflict between the minor plaintiff and guardian may have arisen.

It is a general rule that an action at common law cannot be maintained between a guardian and a ward while that relationship exists. 39 Am. Jur. 2d, Guardian and Ward § 160 (1968). If a representative of the

[9] General Statutes § 17a-93, "Definitions. As used in sections 17a-90 to 17a-124, inclusive, and 17a-152," provides: " 'Guardianship' means guardianship, unless otherwise specified, *of the person* of a minor and refers to the obligation of care and control, the right to custody and the duty and authority to make major decisions affecting such minor's welfare, including, but not limited to, consent determinations regarding marriage, enlistment in the armed forces and major medical, psychiatric or surgical treatment . . . ." (Emphasis added.)

[10] Chapter 802h, entitled "Protected Persons and Their Property," divides the provisions with respect to minors into two sections "Guardians of the Person of a Minor," General Statutes § 45a-603 et seq., and "Guardians of the Estate of a Minor," General Statutes § 45a-628 et seq. General Statutes § 45a-629 provides that if a minor does not have a guardian of his estate and is entitled to property, the court may appoint the parents or guardian to be guardian of the estate. If any of these are not proper persons, the court may appoint any proper person chosen by the minor, if the minor is over the age of twelve. If the minor does not or cannot choose, or makes an improper choice, "the court of probate shall appoint some proper person or persons, who, as guardian of the estate of the minor, shall have charge of all the minor's property, whether acquired before or after the guardian's appointment, but shall have no control over his person." General Statutes § 45a-629 (b).

child's interests does not properly discharge his or her duties, the court may remove him or her and appoint another. *Orsi* v. *Senatore,* 31 Conn. App. 400, 416, 626 A.2d 750, cert. granted, 228 Conn. 908, 635 A.2d 1228 (1993).[11] The only real test for determining whether a person is a proper person to act as guardian or next friend is whether that person's interests are adverse to those of the child. Id.

When a guardian ad litem has been appointed, he or she is usually the proper person to represent a minor plaintiff. There are situations, however, where a minor may sue by next friend notwithstanding the existence of a guardian representing the minor's interests, such as when the guardian declines to take action or is unable to do so. *Williams* v. *Cleaveland,* 76 Conn. 426, 432, 56 A. 850 (1904). Such suits may be filed by a next friend in order to challenge the continued appointment of a conservator; see, e.g., *Cleveland's Appeal,* 72 Conn. 340, 44 A. 476 (1899); to seek an appeal of a probate order when her guardian ad litem refused to do so; *Cottrell* v. *Connecticut Bank & Trust, Co.,* supra; and to bring a petition challenging the sentencing authority of a court on behalf of an incarcerated defendant whose parents were opposed to the proceeding and would not act as guardians and next friends. *Collins* v. *York,* supra, 153–54.

Here, the defendants argue that since the plaintiff's cause of action could have been timely brought by a next friend, it should be barred by the statute of limitations.[12] While a suit by a next friend may be allowed

[11] Certification was granted on the following issues: (1) "Does a foster parent have standing to make the legal claims of a foster child in her care?" and (2) "Does the failure to provide a pre-removal administrative hearing procedure to foster parents in back-to-family placements violate the foster child's constitutional rights?" *Orsi* v. *Senatore,* 228 Conn. 908, 908–909, 635 A.2d 1228 (1993).

[12] The defendant argued that the plaintiff's foster mother would have been an appropriate person to bring an action on the plaintiff's behalf. There

even where a guardian has been appointed, this situation is not the norm; in fact, our Supreme Court has referred to such a situation as "exceptional." *Cottrell* v. *Connecticut Bank & Trust, Co.,* supra, 263. The court in *Cottrell* also noted that, "[a]lthough in the present case the interests of the plaintiff and those of the appointed guardian ad litem are not clearly antagonistic . . . a procedure initiated to protect [the child's] interests should not be utilized to hinder [him] in obtaining a review of any action involving [his] rights." Id., 264–65. In this case, the interests of the guardian and ward appear to have been adverse. We decline to establish a blanket holding that a child has no recourse where no next friend has stepped forward in a timely fashion to protect the child's interests.

Considering the particular facts presented here where a child is a ward of the state without a next friend or guardian of his estate, and has a guardian of his person with interests possibly adverse to his own, we conclude that the statute of limitations is tolled. Under the unique circumstances of this case, the limitations tolled as to both defendants until a court-appointed guardian of the estate was established or until the minor reached the age of majority and was able to act on his own behalf. In this case, no guardian of the estate was ever appointed by the court, but the minor reached majority on November 3, 1985. This action was initiated June 1, 1987, within the two year period and, therefore, was not barred by the statute of limitations. The judgment notwithstanding the verdict rendered for the hospital must be set aside.

---

was evidence that, as of at least 1984, Johanna Caron had severe arthritis and was dependent on the plaintiff for her care and support. At least as of her affidavit of December 10, 1987, she was confined to a wheelchair and required special care. It is perhaps questionable that she was able to act as the plaintiff's next friend. Regardless, Johanna Caron did not so act as next friend for the plaintiff.

## II

The defendant hospital argues that, in the event that this court reverses the trial court, the proper order on remand should be for a new trial. The defendant argues in support of the granting of a new trial that the trial court improperly instructed the jury regarding (1) the statute of limitations, (2) the applicable standard of care, and (3) the doctrine of informed consent, and that it improperly refused to charge on the necessity of expert testimony.

When we evaluate the correctness of jury instructions, " '[t]he ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to the jury in such a way that injustice is not done to either party under the established rules of law.' . . . *Ellice* v. *INA Ins. Co. of New York,* 208 Conn. 218, 226, 544 A.2d 623 (1988) . . . ." *Gemme* v. *Goldberg,* 31 Conn. App. 527, 547, 626 A.2d 318 (1993). We keep this standard in mind when evaluating the defendant's claims.

### A

The defendant hospital first argues that a new trial should be granted since the jury was improperly charged as to the statute of limitations. The trial court, in its memorandum of decision, concedes that the jury was improperly charged as to the appropriate statute of limitations, and that the applicable period of limitations was two years, not three years. According to the trial court, the plaintiff's suit would nevertheless be barred. We find, however, that the error was harmless.

As a matter of law, the court's instructions were incorrect. Under the particular circumstances herein, whether the jury was misled into believing that the plaintiff had three years from the discovery of the

injury to file suit, instead of only two years, is immaterial. Because of our conclusion that the limitations period was tolled and that the plaintiff commenced suit within two years of reaching majority, the plaintiff's suit was timely filed.

A jury's verdict should be set aside only " 'where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . .' " *Caciopoli* v. *Acampora,* 30 Conn. App. 327, 331, 620 A.2d 191 (1993). A verdict should not be set aside where the jury reasonably could have based its verdict on the evidence. *American National Fire Ins. Co.* v. *Schuss,* 221 Conn. 768, 774, 607 A.2d 418 (1992). Here, although the jury was improperly instructed and may have applied the three year statute of limitations, the verdict was not improper, since the action was not barred by even the two year statute of limitations.

B

The hospital's remaining claims depend on how the allegations of the plaintiff's suit are properly characterized. Some additional facts are necessary to the resolution of these claims.

The pleadings were closed as to the defendants by August 23, 1988. On August 29, 1988, the court granted the plaintiff's motion for extension of time to disclose experts for a period of sixty days beyond the close of pleadings.[13] On October 19, 1988, the plaintiff filed a second motion for extension of time to disclose expert

[13] The plaintiff argues that the order of the trial court was improper because Practice Book § 220 (D) provides that plaintiffs must disclose experts within sixty days from the date the case is *claimed to the trial list,* and, therefore, the plaintiff should have had until November 4, 1988, to disclose experts. Both parties concede that this matter was claimed to the trial list on September 6, 1988. Because the plaintiff was granted an extension for disclosure of experts until February 6, 1989, we need not comment on the trial court's initial order.

witnesses. That motion was not acted on until January 9, 1989. The court then ordered the plaintiff, through counsel, to file a written report on or before February 6, 1989, or all further medical testimony would be precluded. On February 3, 1989, the plaintiff filed a disclosure response identifying approximately seventy expert witnesses. On February 6, 1989, the court conducted a hearing at which the plaintiff's counsel admitted that he had obtained these physicians' names from the hospital's general directory. The court ruled this to be an improper disclosure and precluded the plaintiff from presenting expert witnesses at trial. On April 27, 1990, the plaintiff moved for relief from that order. Thereafter, the trial court, finding that the plaintiff had demonstrated no good cause for vacating the prior order, denied the plaintiff's request for relief.

A determination of the defendant hospital's claims requires us first to resolve the plaintiff's claim that the trial court improperly precluded him from presenting expert testimony. As we have recently stated, "Practice Book § 220 (A) provides in pertinent part that '[a] party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial . . . .' The trial court has discretion to impose sanctions on parties who fail to answer interrogatories requesting disclosure of any expert witness the parties intend to call. Practice Book § 231. The sanctions imposed may include the exclusion of any expert testimony at trial. Practice Book § 231 (d); *Separack* v. *Solaz,* 17 Conn. App. 684, 693, 556 A.2d 175, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989); *Perez* v. *Mount Sinai Hospital,* 7 Conn. App. 514, 518, 509 A.2d 552 (1986)." *Gemme* v. *Goldberg,* supra, 534–35.[14] This exclusion of any and all experts also precludes the plaintiff from

[14] We decline to reconsider our holding in *Perez* v. *Mount Sinai Hospital,* 7 Conn. App. 514, 518, 509 A.2d 552 (1986), as the plaintiff requests.

using testimony introduced by the defendant as expert testimony. Id., 536. We find no reason to conclude that the court abused its discretion in excluding expert testimony.

Having determined that the trial court did not improperly exclude expert testimony by the plaintiff, we now address the issue of whether expert testimony was necessary for the plaintiff to prove his allegations. The trial court instructed the jury as to two specific claims of negligence: (1) the hospital failed to establish or enforce a routine policy or practice for obtaining informed consent for the medical or surgical care of disabled children committed to DCYS; and (2) the hospital failed to advise and inform DCYS of the treatment required by the plaintiff. The defendant hospital requested an instruction on the necessity of expert testimony. The court refused that request.

The claims in this case are not easily characterized. Typically, the basis for claiming a lack of informed consent is a failure to make a sufficient disclosure of the risks of or alternatives to a certain medical procedure or treatment. *Hammer* v. *Mount Sinai Hospital,* 25 Conn. App. 702, 706 n.4, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991). "In order to establish the existence of a duty to inform, the plaintiff must show through expert testimony that 'the customary standard of care of physicians in the same practice as that of the defendant doctor was to obtain the patient's consent prior to performing any operation.' *Shenefield* v. *Greenwich Hospital Assn.,* [10 Conn. App. 239, 248–49, 522 A.2d 829 (1987)]." *Mason* v. *Walsh,* 26 Conn. App. 225, 230, 600 A.2d 326 (1991), cert. denied, 221 Conn. 909, 602 A.2d 9 (1992).

This case is not properly characterized as concerning a lack of informed consent because the plaintiff makes no allegation that the disclosure was insufficient,

but rather that disclosure was not made to the appropriate person. Our law makes a distinction between lack of informed consent and failure to obtain *any* consent. *Shenefield* v. *Greenwich Hospital Assn.*, supra, 248. For example, battery is a basis for recovery against a physician under circumstances where the physician fails to obtain consent to the particular treatment or performs a procedure different from the one for which consent has been given, or where he realizes that the patient does not understand what the operation entails. *Lambert* v. *Stovell,* 205 Conn. 1, 4, 529 A.2d 710 (1987). Situations where battery may be proved may also be appropriate for allegations of negligence. See, e.g., *Shenefield* v. *Greenwich Hospital Assn.*, supra. Battery is not an appropriate theory for this case, however, because surgery was never performed.

After the jury charge was delivered, the parties had an extensive colloquy about the correctness of the instructions in light of the plaintiff's claims. As to the plaintiff's first allegation, that the hospital failed to adopt a procedure for obtaining informed consent from DCYS, the court noted the following: "That is not an allegation that [Banta] fell below the standard of care of a doctor. That's an allegation of general negligence. That's an allegation that he didn't do something; that's why the court originally gave the reasonable man standard because that's what [plaintiff's counsel] kept telling me or trying to tell me all during the course of the trial; that that's where he was going. That's why the court permitted him to go and say an expert isn't required."

With regard to the second claim, failure by the hospital to advise and inform the plaintiff's guardian of necessary treatment, the court said that "it's a claim made as to the fact that they didn't convey that information to the legal guardian. Again, as much as you might not like his allegation, that was the thrust of his

claim, and the thrust of his claim is not malpractice in this case. . . . The point is that there is evidence that's been put in here that there were certain rules and regulations which he claims had to be followed in getting informed consent. He put on evidence to claim that the doctor didn't follow these procedures. . . . [H]e doesn't need an expert to have that. It would depend upon what the jury determines was given to the department of children and youth services. . . . The court feels as though a definition of negligence is something for [the jury] to have to determine. [That is] whether or not the doctor was—not negligent in the information he gave, not negligent in whether he sufficiently informed—*negligent in whether or not he gave it to the right person so they could make that decision.*" (Emphasis added.)

We agree with the trial court that the plaintiff's claims sound in general negligence not requiring expert testimony. To prove negligence, it is necessary to prove that a duty existed, that that duty was breached and that the breach of the duty was the proximate cause of the victim's injury. *Hall* v. *Winfrey,* 27 Conn. App. 154, 158, 604 A.2d 1334, cert. denied, 222 Conn. 903, 606 A.2d 1327 (1992); *Catz* v. *Rubenstein,* 201 Conn. 39, 44, 513 A.2d 98 (1986).

The existence of the duty is not at issue in this case. Banta testified as to his and the hospital's general practice and procedures for obtaining consent and establishing appointments. He testified that the consent of the legal guardian would be required for surgery; that he felt that he had satisfied his duty to the plaintiff by meeting with the plaintiff, his family and various DCYS officials in order to apprise everyone of the nature and effects of the medical condition and discuss treatment options. Banta was also questioned as to his familiarity with DCYS's policy with regard to obtaining the necessary consent to treat a ward of DCYS. Finally,

he testified that separate consent would be required at the initiation of an invasive procedure such as surgery, but that it would not necessarily be required to discontinue a treatment such as bracing. The jury reasonably could have believed that this testimony established a duty by Banta and the hospital to obtain consent from the plaintiff's guardian.

The issue of whether that duty was breached was disputed, but we find the resolution of that issue well within the jury's knowledge. "The true test for the admissibility of expert testimony is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue." (Internal quotation marks omitted.) *Puro* v. *Henry,* 188 Conn. 301, 309, 449 A.2d 176 (1982). "Even in cases involving claims of medical and legal malpractice, a case-by-case analysis is employed and, although the general rule requires expert testimony where the specific conduct underlying the plaintiff's claim is such that it amounts to gross negligence, our courts have not required expert testimony. *Puro* v. *Henry,* [supra, 305]; *Console* v. *Nickou,* 156 Conn. 268, 273–74, 240 A.2d 895 (1968) . . . ." (Citations omitted.) *Evans* v. *Warden,* 29 Conn. App. 274, 281, 613 A.2d 327 (1992).

Some aspects of a medical malpractice action are considered to be within the realm of a jury's knowledge. For example, the scope of disclosure in informed consent must be proved in accordance with a lay standard.[15] The determination of the proper person from

---

[15] "Once the existence of a duty to inform has been established, the plaintiff must then prove the extent or degree of disclosure in accordance with the lay standard. *Lambert* v. *Stovell,* 205 Conn. 1, 5, 529 A.2d 710 (1987); *Logan* v. *Greenwich Hospital Assn.,* 191 Conn. 282, 292–93, 465 A.2d 294 (1983); *Mason* v. *Walsh,* [26 Conn. App. 225, 229–30, 600 A.2d 326 (1991),

whom to obtain consent in this case does not require a medical expert, but rather is based on the practices and procedures of the hospital and DCYS, which is within the realm of the jury's knowledge.

Accordingly, we find that the trial court did not act improperly in refusing the defendant's request to charge on the necessity of expert testimony.

## C

The hospital also argues that the trial court incorrectly instructed the jury as to the applicable standard of care and the doctrine of informed consent. Because we find that this case is properly characterized as one of general negligence, and not informed consent, we conclude that the trial court correctly instructed the jury that the applicable standard of care was the reasonable man standard.

Having found no harmful error in the instructions to the jury, we remand this matter for judgment to be rendered in accordance with the jury's verdict.

## III

With regard to defendant health services, the plaintiff also claims that the trial court improperly granted health services' motion to dismiss for failure to make out a prima facie case. We do not agree.

When reviewing a judgment of dismissal pursuant to Practice Book § 302, the issue to be decided is whether sufficient facts were proved to make a prima facie case. *Wordie* v. *Staggers*, 27 Conn. App. 463, 465, 606 A.2d 734 (1992). The evidence offered by the plain-

cert. denied, 221 Conn. 909, 602 A.2d 299 (1992)]. The physician is thus charged with the duty to disclose to the patient that information that 'a reasonable patient would have found material for making a decision whether to embark upon a contemplated course of therapy.' *Logan* v. *Greenwich Hospital Assn.*, supra." *Gemme* v. *Goldberg*, 31 Conn. App. 527, 626 A.2d 318 (1993).

tiff is to be taken as true and interpreted in the light most favorable to the plaintiff. Id.; see also *Ivimey* v. *Watertown,* 30 Conn. App. 742, 751, 622 A.2d 603, cert. denied, 226 Conn. 902, 625 A.2d 1375 (1993). Whether the plaintiff has established a prima facie case is a question of law. *Wordie* v. *Staggers,* supra.

It is undisputed that, in order to prove a prima facie case of negligence, the plaintiff had to show that health services breached a duty owed to the plaintiff, and that there existed a causal connection between the breach and the plaintiff's injury. *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 4, 444 A.2d 211 (1982).

The plaintiff claims that General Statutes § 19a-50[16] established the required duty by placing on health services the "final administrative responsibility" for services provided by the state for crippled children and children with cardiac defects, including the plaintiff. The plaintiff argues that this statute makes health services liable for any injury caused by a dereliction in the performance of those services by all parties including, in this case, the hospital.

The trial court found that, even if such a duty did exist, the plaintiff had failed to prove that health services breached any statutory duty. General Statutes §§ 19a-6 and 19a-50 provide that health services is responsible for planning and administering statewide

---

[16] General Statutes § 19a-50 provides in pertinent part: "(a) The department of health services is designated as the state agency to administer a program of services for children who are crippled or suffering from conditions which lead to crippling or suffering from cardiac defect or damage and to receive and administer federal funds which may become available for such services; and the commissioner of health services is authorized to extend and improve, as far as practicable, such services for locating such children and for providing medical, surgical, corrective and other services and care, and facilities for diagnosis, clinical services, hospitalization and aftercare for such children. The commissioner of health services shall have final administrative responsibility for all activities on behalf of such children as are provided by this section . . . ."

programs. The plaintiff does not claim that such programs have not been created and maintained, nor does he claim that such programs were not available to him. Such a program was available and utilized by the plaintiff through the hospital. The plaintiff failed to establish that the hospital's treatment programs were subject to the control of health services. The hospital is a private facility and retains such status even though it receives moneys, not controlled by health services, from the state to defray operating costs.[17]

We find that the trial court properly concluded that the plaintiff had failed to establish a prima facie case of negligence against health services. Accordingly, the motion to dismiss filed by health services was properly granted.

## IV

Finally, the plaintiff asserts that the trial court improperly denied his application for payment of fees, costs and expenses for his appeal pursuant to Practice Book § 4017.[18] The trial court must make two determinations: (1) that he is indigent, and that (2) he is

[17] General Statutes § 17-308 provides for state payment toward the support of patients at Newington Children's Hospital.

[18] Practice Book § 4017 provides in pertinent part: "If a party in any case where fees and costs may lawfully be waived is indigent and desires to appeal, that party may, within the time provided by the rules for taking an appeal, make written application, to the court to which the fees required by statute or rule are to be paid, for relief from payment of fees, costs and expenses. The application must be under oath and recite, or it must be accompanied by an affidavit reciting, the grounds upon which the applicant proposes to appeal and the facts concerning the applicant's financial status.

"The judicial authority shall assign the request . . . for a hearing . . . .

"If the court is satisfied that the applicant is indigent and entitled to an appeal, because of a statutory or constitutional right to court appointed counsel or allowing an indigent party to appeal without payment of fees, costs and expenses, the court may (1) waive payment by the applicant . . . and (2) order that the necessary expenses of prosecuting the appeal be paid by the state. . . ."

entitled to appeal. Factual findings of a trial court will be overturned only if they are clearly erroneous. *Rosick* v. *Equipment Maintenance & Service, Inc.,* 33 Conn. App. 25, 40, 632 A.2d 1134 (1993). The language of § 4017 is permissive and leaves the waiver of fees within the discretion of the trial court.

Our review of the record discloses that the trial court furnished a full hearing on this matter on July 24, 1992. After considering the testimony of the plaintiff and reviewing his financial affidavit, the court found that the plaintiff had failed to meet his burden of proof as to indigency. Noting that the case had been originally handled on a contingency basis and citing *Cooper* v. *Matzkin,* 160 Conn. 334, 340, 278 A.2d 811 (1971) ("the state is under no duty to finance unfounded, collateral, civil legal excursions"), the trial court also impliedly concluded that the plaintiff had not sustained his burden of showing that he was entitled to an appeal. The plaintiff has not demonstrated that the trial court abused its discretion in denying his application. The trial court's decision as to the payment of fees, costs, and expenses is affirmed.

The judgment is reversed as to the defendant Newington Children's Hospital and the case is remanded with direction to render judgment for the plaintiff in accordance with the jury verdict. The judgment is affirmed as to the defendant commissioner of health services.

In this opinion the other judges concurred.