[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action by the plaintiff against the defendant Laverne Brown Hyatt (hereinafter Brown, her name at the start of the case) in breach of contract and against defendant City of Hartford as stakeholder of certain funds, is before this court on remand, pursuant to a decision of the Appellate Court, 33 Conn. App. 294 (1993).
This court finds the following facts:
In the spring of 1988, the defendant Brown applied to the defendant City of Hartford (hereinafter the City) for a loan for rehabilitation of her house under the federal Housing Preservation Loan Program. The City found Brown eligible, wrote specifications and sought bids from contractors for the specified work on Brown's house. Plaintiff submitted a bid for this work on July 16, 1988 in the amount of $16,350 which was accepted by the City. Plaintiff and Brown entered into an agreement on August 10, 1988 for certain additional work, totalling $6021. On September 6, 1988, under the supervision of Sal Rizza, the City's rehabilitation specialist, plaintiff and Brown entered into an agreement for less and for different additional work at a price of $3800. This latter agreement was on a form entitled "Additional Work Authorization, City of Hartford, Department of Hartford" and signed by plaintiff Brown Rizza and William Gardine, the City Housing Services Manager. On September 6, 1988 plaintiff and Brown also entered into an agreement entitled "Agreement for Housing Rehabilitation" on the City's standard form for such agreements. That agreement provided plaintiff was to do the work specified in the bid of $16,350, plus the work in the additional authorization of CT Page 7471 $3800, making the total price $20,150. That agreement provided work was to begin within 30 calendar days from the date of a written proceed order and be completed within 120 calendar days after starting work. It further provided substantial City involvement in the operation of the contract: (1) the City Department of Housing and Community Development was designated as construction manager; (2) the City had the right to inspect and audit plaintiff's records concerning plaintiff's expenses and costs under the agreement; (3) plaintiff agreed to comply with specified federal, state laws and city ordinances; (4) payments to plaintiff were to be made by City funds; (5) City, as construction manager, was empowered to inspect plaintiff's work and to determine conformance with the agreement.
As part of the overall arrangement, Brown, on September 13, 1988, executed a mortgage in favor of the City to secure repayment to the City at a 3% rate of interest over a number of years. Simultaneous with execution of that mortgage, Brown was given the right to cancel within three days.
The plaintiff completed the contracted-for work in January or February 1989. Both Mr. Rizza and Brown signed a contract payment authorization certifying the work was satisfactorily done, although Brown at the trial testified it was not. On December 31, 1988 Brown paid plaintiff $3000 on account, and later stopped payment on that check.
Plaintiff claims damages of $28,899, of which $20,150 is sought to be paid from the fund held by the City and $8749 to be paid by Brown.
The City essentially interposed no defense and left the plaintiff to its proof. Brown alleged a general denial, special defenses of improper workmanship and violation of the Home Improvement Act (CGS § 20-418 et seq.) and counterclaims of plaintiff's breach of contract, violations of the Home Improvement Act and of Connecticut Unfair Trade Practices Act (CGS § 42-110b et seq.)
As indicated above, the court finds plaintiff performed under the agreement, and the central issue is Brown's defenses and counterclaims based on violation of the Home Improvement Act. CT Page 7472
That Act provides at § 20-429 (a):
 "No improvement contract shall be valid or enforceable against an owner unless it (1) is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor."
Section 20-428 provides that the Act does not apply to "municipalities of the state."
The defendant's defenses and counterclaims raise three questions: (1) has the Act been complied with; (2) is the Act applicable under the facts of this case; (3) does § 20-428
exempt the agreement at suit from the Act?
Brown asserts the home improvement contract is deficient in that it does not contain (1) the entire agreement of the parties, (2) starting and ending dates and (3) notice of cancellation rights in the owner.
Section 20-429, while requiring the home improvement contract contain the entire agreement, does not require that that contract be a single document. Our courts have long recognized that multiple writings can be considered in determining the contract of the parties and their intent.Mongillo v. Commissioner, 214 Conn. 225, 229 (1990).
Plaintiff contends the entire agreement between the parties consisted of the contract for extras in the amount of $6021, dated August 10, 1988 and the "Agreement for Housing Rehabilitation" signed by Brown on September 6, 1988. However, neither document contains the notice of cancellation required by § 20-429 (a)(6), incorporating by reference chapter 740, § 42-135a. Brown was given a notice of right to cancel at the time she signed the mortgage to the City on September 16, 1988, but that notice does not relate to the "Agreement for Housing Rehabilitation, signed CT Page 7473 by her ten days before. Thus the home improvement contract here in question does not comply with § 20-429.
As to the applicability of the Act to the facts of this action, in cases in which the Supreme Court has construed the Act, it has alluded to the legislative debates relating to the purpose of the Act and the circumstances giving rise to its need. Caulkins v.Petrillo, 200 Conn. 713, 719 (1986); Barrett Builders v.Miller, 215 Conn. 316, 327 (1990).
In the House, Representative William P. Candelori stated: "The purpose of the bill is to provide minimal, and I stress minimal safeguards for the consumer who contracts for home improvement work to be done on or in the home." He went on to assert that 15% of all complaints to the Department of Consumer Protection related to home improvements and particularly to poor workmanship, failure of the contractor to show up or to complete the job, substitution of materials, higher costs and extra charges. 22 H.R. Proc., Pt 33, 1979 Session pp. 11,613-11,621.
Similarly, in the Senate, Senator Audrey Beck stated the purpose of the bill was to provide "some safeguards for consumers who contract for home improvement work" and to promote "the right of the consumer to some understanding, some protection." 22 S. Proc. Pt 17, 1979 Session pp 5796-97.
In this case, Brown was afforded much more protection than afforded by the Act from an overreaching, negligent or fraudulent contractor by reason of the participation of the City in negotiating, monitoring, and assuring compliance of the plaintiff with the agreement.
Statutes should be construed in accordance with common sense, Murach v. Planning Zoning Commission, 196 Conn. 192,196 (1985); Lamb v. Burn, 202 Conn. 158, 168 (1987) and to achieve rational results that meet legislative objectives. La Providenza v. State Employees' RetirementCommission, 178 Conn. 23, 29 (1979).
Strictly applying the Act to the circumstances of this case, when the City so fully intervened between the home owner and the contractor, flies in the face of common sense and does not fulfill the legislative intent. However, the CT Page 7474 clear and unambiguous language of the Act mandates this court construe it as written, despite the harsh result that would cause.
Section 20-428, however, exempting municipalities, does render the Act inapplicable in this case. No question of exemption would arise if the City had been a named party in, and signatory, along with plaintiff and Brown, of the "Agreement for Housing Rehabilitation."
But for all practical purposes City was a functional and essential party to that agreement. The City established the specifications for the rehabilitative work bid upon by plaintiff and the City accepted plaintiff's bid. The City approved and its employees signed the "Additional Work Authorization" for the extras priced at $3800 and incorporated in the "Agreement for Housing Rehabilitation." The City provided its standard form for the basic agreement between the parties and mandated most of its terms. The City was the construction manager of the project with the right to inspect plaintiff's work and the power to approve it. The City was to pay plaintiff with its funds. The City was a third party beneficiary of the contract because that contract furthered its policy of rehabilitating houses. All of this constituted such substantial municipal involvement by the City as to render this transaction exempt from the Act, pursuant to § 20-428.
Thus the court concludes plaintiff has established its right to the contract price of $20,150. As to the extras not included in the "Agreement for Housing Rehabilitation" claimed by plaintiff, they are the subject of a contract between plaintiff and defendant that does not comply with the Act because of the lack of the requisite notice of right of cancellation and is not exempt from the Act, pursuant to § 20-428, because the City is not involved.
Brown has failed to prove her counterclaim that plaintiff breached the contract. Brown has proven her counterclaims that plaintiff violated the Act and, based on that violation (§ 20-427 (b)), plaintiff also violated Connecticut Unfair Trade Practices Act (§ 42-110b(a)), but Brown has established no damages as a consequence of plaintiff seeking the extras in this suit, and this court awards her no damages. CT Page 7475
Judgment may enter for the plaintiff against Brown on the first count for $20,150 and against the City on the second count and the City is ordered to pay plaintiff the $20,150 it holds as stakeholder; judgment may enter for the plaintiff on Brown's counterclaim for breach of contract, and judgment may enter for Brown against plaintiff on her counterclaims for violations of the Act and of CUTPA, but the court awards Brown no damages.
Robert Satter State Judge Referee
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 7481
MALONEY, J.