JACQUES ALL TRADES CORPORATION *v.*
LAVERNE BROWN ET AL.
(11653)

DUPONT, C. J., LANDAU and SCHALLER, Js.

---

Argued September 23—decision released December 21, 1993

*Joseph C. Morelli,* for the appellant-appellee (plaintiff).

*George M. Purtill,* with whom was *R. Richard Croce,* for the appellant-appellee (named defendant).

*Evans Jacobs, Jr.,* for the appellant-appellee (defendant city of Hartford).

SCHALLER, J. In this contract action for payment on completed home improvements, the plaintiff, Jacques All Trades Corporation, appeals from the amended judgment of the trial court rendered on August 4, 1992, in favor of the defendant Laverne Brown on count one of the plaintiff's complaint. The court found the defendant city of Hartford, which held the majority of the funds at issue pursuant to its home rehabilitation loan program, liable on count two of the plaintiff's complaint. In addition, the court rendered judgment in

favor of the plaintiff on all counts of Brown's counter-claim. Both defendants have filed cross appeals.[1]

The dispositive issue on appeal is whether the trial court misconstrued count one of the plaintiff's complaint, and, as a result, improperly rendered judgment.[2]

The following facts are pertinent to this appeal. In 1988, Brown owned a single-family dwelling in Hartford. Through federal funding, the Hartford department of housing and community development issued low interest home rehabilitation loans for qualified homeowners. In the spring of 1988, Brown applied for a low interest housing rehabilitation loan. The city granted Brown's application and solicited bids for the work that it authorized on Brown's house. Brown accepted the plaintiff's bid of $16,350.

The plaintiff signed an "agreement for housing rehabilitation" (main contract) on August 26, 1988, and Brown signed on September 6, 1988. A representative of the city had drafted the agreement. The agreement contained numerous provisions outlining the role of the city in the project. Despite the active involvement of the city in this project, it was required that the agreement be signed by only the plaintiff-contractor and the owner of the property, Brown.

---

[1] Separate appeals were previously filed by both defendants. The defendants withdrew those appeals and filed cross appeals in this action.

[2] The parties raised the following other issues on appeal: (1) whether the trial court improperly rendered judgment against the city without having rendered judgment against Brown; (2) whether the trial court improperly concluded that a contract between Brown and the plaintiff violated the Home Improvement Act and the Home Solicitation Sales Act; (3) whether the court improperly concluded that two agreements drafted by the city did not need to comply with the Home Improvement Act and the Home Solicitation Sales Act, based on the exemption provision in the Home Improvement Act; and (4) whether the court improperly rendered judgment for the plaintiff on all counts of Brown's counterclaim. These issues include those raised in the defendants' cross appeals. Because we reverse the judgment and remand this case for a new trial on the ground that the trial court misconstrued count one of the complaint, we do not reach these other issues.

The agreement, without detailing the remodeling work to be completed, specified that the price for the rehabilitation work would be $20,150, that work would commence within thirty days of a written proceed order, and that such work would be completed within 120 days of commencement. The $20,150 included the cost of additional work on the second floor bathroom, which the city was expected to authorize. On September 7, 1988, the city executed an "additional work authorization," thus formally consenting to the additional remodeling of the second floor bathroom for $3800. The plaintiff previously had agreed to this figure on August 26, 1988, and Brown likewise had agreed on September 6, 1988.

The plaintiff and Brown, on August 10, 1988, had entered into an entirely separate agreement regarding the bathroom renovations at a cost of $6021. In the September 6, 1988 agreement, however, the city authorized work at a cost of only $3800, and this amount was included in the agreement for housing rehabilitation. Thus, the city now agreed to pay $20,150 (the original $16,350 plus $3800). Sal Rizza, the construction manager for the city, testified that, from the city's perspective, the August 10, 1988 agreement between the plaintiff and Brown was void. He further testified, however, that Brown and the plaintiff could still negotiate for additional work beyond that included in the agreement for housing rehabilitation, for which Brown would pay with her own funds.

An order to proceed was issued by Brown on September 16, 1988. The plaintiff commenced work in late September and the president of the plaintiff corporation, Jacques Picotin, thought that the plaintiff had completed work on February 28, 1989. As a result, the plaintiff issued a notice to Brown on March 20, 1989, requesting a payment of $8749.32. This amount represented the cost of work that the plaintiff had calcu-

lated to exceed the loan amount of $20,150, which the plaintiff believed should be paid directly by Brown.[3] Picotin conceded, however, that, while he thought that the plaintiff had completed the work as of February 28, 1989, the plaintiff actually was required by Rizza to return to the premises in April, 1989, to finish placing shingles on a portion of the roof.

Rizza testified that, after the completion of the work, he brought the plaintiff and Brown together for a settlement meeting on June 6, 1989, to finalize the project and to authorize payment to the plaintiff. At the conference, Brown and the plaintiff first signed a change orders document, which itemized the bathroom work completed by the plaintiff and stated that the cost of the bathroom renovations totalled $8603.64. The change orders document stated that the payment from the city on that amount was $3800, with the $4803.64 balance payable by Brown.[4]

On redirect examination, Rizza concurred that Brown agreed to sign the change orders document, stating that she would pay $4803.64, and agreed to sign the contract payment authorization form so that the city could pay the plaintiff the $20,150. Rizza testified that on

[3] In this notice, the plaintiff also offered to accept $6549.32 in settlement of Brown's alleged debt.

[4] Although the $3800 corresponded to the amount that the city originally agreed to pay pursuant to the additional work authorization, that amount now reflected work that differed from that listed in the additional work authorization. For example, the additional work authorization contained an item concerning tile work. The plaintiff, however, did not undertake any tile work. Rizza testified that due to the vast differences between the work originally authorized and that completed by the plaintiff and reflected in the change orders document, the $3800 stated in the additional work authorization acted as a $3800 credit on the change orders document. The entire amount of the bathroom renovation work actually completed by the plaintiff was calculated on the change orders document, and the $3800 was subtracted from that amount, leaving Brown to pay the amount above that originally authorized by the city.

June 6, 1989, he and Brown had signed the contract payment authorization form, in which each stated that the work had been completed satisfactorily. Finally, Rizza testified that to finalize the payment agreement, the plaintiff had to sign two forms: a one year warranty form regarding the work completed, and a lien waiver form. The plaintiff never signed those forms, and the city funds were not released.

When the plaintiff was not paid either by Brown or by the city from loan funds on behalf of Brown, it filed suit on July 30, 1990. In count one, the plaintiff alleged that Brown had refused to pay money rightfully due the plaintiff.[5] In count two, the plaintiff stated that the city, as the administrator of the housing rehabilitation loan program, was holding $20,150 to which the plaintiff was entitled as a result of the plaintiff's completion of the work specified in the main contract.[6] Brown

---

[5] Count one of the plaintiff's complaint stated in full:

"1. On or about August 26, 1988, the Plaintiff, Jacques All Trades Corp., entered into a written contract with the Defendant, Laverne Brown, for the repair and remodeling of the Defendant's property located at 121 Newington Avenue, Hartford, Connecticut.

"2. The original contract amount was $20,150.00.

"3. On September 6, 1988, the parties amended said contract in writing providing for additional work in the second floor [bath]room to be done by the Plaintiff and paid for by the Defendant in the amount of $3,800.00.

"4. On August 10, 1988, the parties amended said contract in writing once again providing for additional work to the second floor bathroom and roof to be done by the Plaintiff and paid for by the Defendant in the amount of $6021.00.

"5. The Plaintiff has satisfactorily completed all of said work but the Defendant, despite demand, has neglected and refused to pay to the Plaintiff the sums rightfully and due owing."

[6] Count two of the plaintiff's complaint stated in full:

"6. The Defendant, City of Hartford, is the administrator of a Housing Preservation Loan Program, through the Department of Housing and Community Development, from which the Defendant, Laverne Brown, obtained a low interest loan in the amount of $20,150.00 to pay for the original contract price.

"7. The Defendant, City of Hartford, is currently holding at least $20,150.00 to which the Plaintiff is entitled and is, therefore, the stakeholder to that extent.

counterclaimed that the project was not completed in a workmanlike fashion, that the agreement for housing rehabilitation was invalid pursuant to General Statutes § 20-418 et seq., the Home Improvement Act, and that, as a result of the violation of the Home Improvement Act, the plaintiff committed unfair trade practices pursuant to General Statutes § 42-110a et seq.[7]

The trial court originally rendered judgment on June 3, 1992, concluding that the agreement for housing rehabilitation and the additional work authorization regarding the bathroom were not required to comply with General Statutes § 20-429, part of the Home Improvement Act, pursuant to an exemption found in General Statutes § 20-428. Section 20-428 provides in part that the Home Improvement Act does not apply to "[t]he government of the state, municipalities of the state or any department or agency of the state or such municipalities." The court then concluded that the agreement for housing rehabilitation and the additional work authorization, both drafted by the city, were exempt from the provisions of the Home Improvement Act.

The court further concluded that the original August 10, 1988 agreement between the plaintiff and Brown for bathroom remodeling complied with the provisions of General Statutes § 20-429. As a result, the court rendered judgment against Brown for $2221, the difference between the full amount of the August 10,

"8. The Plaintiff is entitled to receive all funds currently held by the Defendant, City of Hartford by virtue of its completion of the work."

In the plaintiff's prayer for relief, the plaintiff requested "5. An [o]rder requiring the Defendant, City of Hartford, to immediately pay over to the Plaintiff all sums of money held by the City."

[7] Brown claimed that the alleged violation of the cancellation notice requirement found in General Statutes § 20-429 (a) (6) of the Home Improvement Act was also a violation of General Statutes § 42-135a of the Home Solicitation Sales Act, which in turn constituted an unfair or deceptive act under General Statutes § 42-110b.

1988 agreement ($6021) and the city's portion ($3800). Further, the court rendered judgment against the city for $20,150, and against Brown on each count of her counterclaim.

Brown filed a motion for articulation of the trial court's decision on June 18, 1992. In a memorandum of decision dated July 29, 1992, the court amended its judgment, and found that the August 10, 1988 contract between the plaintiff and Brown did not comply with General Statutes § 20-429 (a) (7), since the document lacked starting and completion dates. In addition, the court explained that Brown's counterclaim had been denied since she did not carry her burden of proof on any count. Finally, the court again rendered judgment against the city for $20,150. Therefore, the plaintiff had a judgment against the city for $20,150, but had no judgment against Brown.

The plaintiff then filed a motion for articulation of the trial court's memorandum of decision dated July 29, 1992. Specifically, the plaintiff claimed that in order to be consistent with the trial court's decision rendering judgment against the city on count two, the court also had to render judgment against Brown on count one to reflect Brown's underlying loan obligation to the city. The plaintiff asserted that count one of the complaint was directed at the main contract entered into by the plaintiff and Brown.

In its articulation dated September 17, 1992, the trial court stated that "[t]he court's understanding of the pleadings was that under count one plaintiff sought from the defendant Laverne Brown sums due for extra work performed outside the original contract." As a result of the court's interpretation that count one encompassed only work outside the main contract and that such work did not comport with the applicable statutes, the court rendered judgment for Brown. We con-

clude that the trial court improperly construed count one of the plaintiff's complaint and order a new trial.

The interpretation of pleadings is always a question of law for the court. *Cahill* v. *Board of Education,* 198 Conn. 229, 236, 502 A.2d 410 (1985); *Drummond* v. *Hussey,* 24 Conn. App. 247, 248, 588 A.2d 223 (1991); *Mac's Car City, Inc.* v. *DeNigris,* 18 Conn. App. 525, 529, 559 A.2d 712 (1989); *Sauerwein* v. *Bell,* 17 Conn. App. 697, 702, 556 A.2d 613, cert. denied, 211 Conn. 804, 559 A.2d 1158 (1989). In addition, "[t]he allegations of the complaint must be given such reasonable construction as will give effect to [it] in conformity with the general theory which it was intended to follow, and do substantial justice *between the parties.* (Emphasis in original.) *Burns* v. *Koellmer,* 11 Conn. App. 375, 382, 527 A.2d 1210 (1987), quoting *Cahill* v. *Board of Education,* supra." (Internal quotation marks omitted.) *Drummond* v. *Hussey,* supra, 249.

In this case, the trial court found that count one of the complaint alleged only the failure of Brown to pay sums for work completed outside the main contract. At oral argument, counsel for the plaintiff and for Brown conceded that the trial was conducted under the theory that count one concerned Brown's potential liability under the main contract, as well as under the contract that provided for additional work. Our review of the complaint and the evidence presented at trial indicates that the plaintiff sought relief from Brown not only for the work performed pursuant to the contract for additional work, but also for the work provided for in the main contract. We conclude, therefore, that the trial court misconstrued count one of the complaint.

The trial court's improper reading of count one of the complaint directly affected the judgment of the court. See generally *Pergament* v. *Green,* 32 Conn. App. 644, 651, 630 A.2d 615, cert. denied, 228 Conn. 903,

634 A.2d 296 (1993) (trial court's consideration of fiduciary breach theory of liability that was not alleged in complaint affected court's decision on matters properly alleged). In ruling on count one, the trial court did not consider Brown's liability on the main contract. With regard to count two, however, the court determined that the city was liable for $20,150, despite the fact that the city was merely holding the federal moneys to be paid to the plaintiff upon the satisfactory completion of the home improvement project. Absent predicate liability of Brown based on count one to pay the plaintiff the $20,150 under the main contract, the city could not be liable to pay the plaintiff. There was no direct obligation on the part of the city to pay the plaintiff. Since the trial court did not find Brown liable on the main contract, it improperly rendered judgment against the city on count two.

The judgment is reversed and the case is remanded for a new trial. The cross appeals are dismissed.

In this opinion the other judges concurred.