BARBARA KUNST ET AL. *v.* GLENN E. VITALE ET AL.
(14447)

Landau, Schaller and Hennessy, Js.

Argued April 25—officially released August 13, 1996

*Robert J. Cooney*, for the appellant (named defendant).

*Jonathan Perkins*, with whom, on the brief, was *Robert Luysterborghs*, for the appellees (plaintiffs).

LANDAU, J. The defendant Glenn E. Vitale[1] appeals from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff. The plaintiffs Barbara Kunst and Albert Kunst[2] commenced this medical malpractice action following a surgical procedure to Barbara Kunst's left foot performed by the defendant podiatrist. The jury awarded Barbara Kunst damages in the amount of $79,460, and Albert Kunst damages in the amount of $2500. The two issues we must consider on appeal are (1) whether the trial court properly submitted the case to the jury on a theory of simple negligence, and (2) whether there was sufficient expert testimony adduced at trial to establish the elements of medical malpractice.

The following facts and procedural history are relevant to the resolution of this appeal. On several occasions in 1989, the plaintiff discussed with the defendant the possibility of correcting a variety of problems with her left foot. In particular, the plaintiff had a bunion under her big toe that was causing her pain, her big toe was bent inward and she had hammertoe deformities on

---

[1] The defendants named in this action were Glenn E. Vitale, a podiatrist, and Podiatry Associates, P.C. The action was withdrawn as to Podiatry Associates on December 13, 1994. For purposes of this opinion, therefore, the word defendant refers only to Vitale.

[2] The plaintiffs are Barbara Kunst and her husband, Albert Kunst. Count two of the complaint asserts that, as a result of the defendant's negligence in treating Barbara Kunst, Albert Kunst suffered a loss of consortium. Because Albert Kunst's claim is derivative, our use of the word plaintiff in the singular refers only to Barbara Kunst.

her fourth and fifth toes. The defendant suggested that all three problems could be rectified by various surgical procedures.

The defendant advised the plaintiff that the procedure that would be used to straighten the big toe[3] would necessitate the cutting of bone and the placement of a metal screw which, depending on the healing process, would be removed within six months to one year. The defendant also informed the plaintiff that there were certain risks associated with the surgeries such as the inherent danger of using general anesthesia, the possibility of infection and the possibility of complications. The defendant also explained that there would be post-operative pain. After obtaining a second opinion from an orthopedic surgeon, who recommended the surgeries, and after discussing the matter with her husband, the plaintiff apprised the defendant that she wanted to proceed. The surgery was performed on October 19, 1989.

The plaintiff's postoperative care began the day after the surgeries when the plaintiff contacted the defendant and informed him that she was experiencing "excruciating" pain and that her big toe was pointing upward. On several follow-up visits over the next two months, the defendant took measures to relieve the plaintiff's discomfort and to dislodge scar tissue. In late December, 1989, however, dissatisfied with the care provided by the defendant, the plaintiff began treatment with a second podiatric surgeon, Steven Silverstein. On January 24, 1990, Silverstein performed a second surgical procedure to remove the screw from the plaintiff's big toe.

On November 21, 1994, the trial court granted the defendant's motion to preclude the plaintiff's expert

---

[3] The plaintiff's action is primarily premised on the surgical procedure related to straightening the plaintiff's big toe. In her complaint, the plaintiff alleged, inter alia, that the defendant's care and treatment were negligent

witnesses from testifying as a result of the plaintiff's noncompliance with Practice Book § 220 (D). At the close of the plaintiff's case, and again after the defendant presented his case, the defendant orally moved for a directed verdict on the ground that the plaintiff failed to establish the elements of medical malpractice through expert testimony. The trial court reserved its decision on both motions.

At the close of all evidence, the trial court submitted the case to the jury on three theories of liability: medical malpractice, lack of informed consent and simple negligence. The jury returned a verdict for the plaintiff. The defendant filed postverdict motions to set aside the verdict, in arrest of judgment, for judgment and for a new trial. In a memorandum of decision issued on January 19, 1995, the trial court denied all motions, although it did reduce the award of economic damages from $10,000 to $4460. This appeal followed.

I

The parties do not dispute the fact that the complaint properly alleged medical malpractice and lack of informed consent. The defendant claims, however, that the trial court improperly submitted the case, which he argues sounds exclusively in professional negligence, to the jury on a theory of simple negligence. As a threshold matter, therefore, we must determine whether the trial court properly construed the complaint to allow the plaintiff to recover based on simple negligence before we consider whether the plaintiff established the elements of medical malpractice.

The plaintiff arrives at her contention that the trial court properly submitted the case to the jury on a theory of simple negligence in a rather circuitous manner. She

and that the defendant performed a different procedure than that to which she consented.

first argues that, because paragraph ten (d) of the complaint alleged that the defendant "failed to perform a surgical procedure which he had told the plaintiff he would perform," the complaint sufficiently alleged that she did not consent to the procedure that the defendant did employ. She next asserts that, although our law has traditionally recognized that such an allegation gives rise to an action based only on a theory of assault and battery, a cause of action not pursued in this case, the trial court properly relied on *Caron* v. *Adams*, 33 Conn. App. 673, 688, 638 A.2d 1073 (1994), for the proposition that a physician can also be held liable on a theory of simple negligence for the damage he causes when he performs a procedure for which there is no authorization. We disagree with the plaintiff.

"The interpretation of pleadings is always a question of law for the court. . . . In addition, the allegations of the complaint must be given such reasonable construction as will give effect to [it] in conformity with the general theory which it was intended to follow, and do substantial justice *between the parties*." (Citations omitted; internal quotation marks omitted.) *Jacques All Trades Corp.* v. *Brown*, 33 Conn. App. 294, 302, 635 A.2d 839 (1993). " 'It is axiomatic that the parties are bound by their pleadings.' *Calabro* v. *Calabro*, 33 Conn. App. 842, 847, 639 A.2d 1046 (1994)." *Geren* v. *Board of Education*, 36 Conn. App. 282, 289, 650 A.2d 616 (1994), cert. denied, 232 Conn. 907, 653 A.2d 194 (1995).

Our review of the complaint reveals that all of the plaintiff's allegations are allegations of medical malpractice and lack of informed consent. Paragraph ten of count one, which comprises the plaintiff's allegations of professional negligence provides: "The *medical care, evaluation, examination and diagnosis and treatment* by Vitale were negligent and a *violation of the standard of care of podiatric surgeons in the community*." (Emphasis added.)

Subsections (a) through (g) specify the manner in which the defendant allegedly breached his professional standard of care. These subsections state that the defendant "(a) failed to inform the plaintiff of the reasonable risks and complications involved in her surgeries . . . (b) failed to properly install the proper size cortical screw . . . (c) failed to recognize the excessive length of the cortical screw . . . (d) failed to perform a surgical procedure which he had told the plaintiff he would perform . . . (e) performed unnecessary surgery . . . (f) additionally performed unnecessary surgery . . . (g) failed to properly administer and supervise post-operative care and treatment to the plaintiff." Thereafter, each of paragraphs eleven through seventeen, which allege several consequences of the surgery, begins with either the phrase "[a]s a result of the *professional negligence* of the defendant, Glenn C. Vitale" or "[a]s a further result of the *professional negligence* of the defendant, Glenn C. Vitale." (Emphasis added.)

Nevertheless, in its memorandum of decision, the trial court opined that the case was properly submitted to the jury on a theory of simple negligence. The court indicated that, because the evidence adduced at trial was "in sharp conflict on the issue of whether the plaintiff consented to the procedure which the defendant performed," it "perceived the applicable rule of law to be as annunciated in [*Caron* v. *Adams*, supra, 33 Conn. App. 673]." The court quoted the following sentence from *Caron* in its memorandum of decision: "Situations where battery may be proved may also be appropriate for allegations of negligence." Id., 688. The trial court's reliance on *Caron* is misplaced.

First, the decision in Caron did not involve professional negligence or lack of informed consent. Rather, it was an action sounding in general negligence to recover for personal injuries against a hospital for its

failure to inform the plaintiff's guardian that the plaintiff required surgery to correct a medical condition. In *Caron*, the plaintiff, a ward of the department of children and youth services (DCYS) (now the department of children and families), sought damages against DCYS, its commissioner, and the Newington Children's Hospital. The complaint alleged, inter alia, that the hospital failed to advise DCYS of the treatment required by the plaintiff. In holding that the trial court properly precluded the plaintiff from presenting expert witnesses due to his failure to comply with Practice Book § 220 (A), we concluded that the plaintiff's recovery was not barred by his inability to present expert witnesses because the plaintiff's claims sounded in *general negligence.* Id., 689.

Second, because the quoted language from *Caron* is found in a general discussion where we recognized that our law draws a distinction between a lack of informed consent and a failure to obtain any consent; *Caron* v. *Adams*, supra, 33 Conn. App. 688; it constitutes dictum rather than an applicable rule of law. Moreover, it appears that the trial court may have misunderstood the dictum in *Caron*. Although the *Caron* court acknowledged that "battery is a basis for recovery . . . where the physician fails to obtain consent," it cites *Shenefield* v. *Greenwich Hospital Assn.*, 10 Conn. App. 239, 248, 522 A.2d 829 (1987), for the proposition that "[s]ituations where battery may be proved may also be appropriate for allegations of negligence." *Caron* v. *Adams*, supra, 688. In *Shenefield* v. *Greenwich Hospital Assn.*, supra, 248, however, we stated that when an allegation is made against a physician that he performed a procedure that was not consented to, "[t]o sustain a negligence action . . . the plaintiff must establish through *expert testimony* both the standard of care and the fact that the defendant's conduct deviated from that standard." (Emphasis added.) Thus, even where it is

alleged that a medical professional performed a procedure for which consent was not procured, such an allegation does not give rise to a cause of action based on a theory of simple negligence.

On the basis of on our review of the plaintiff's complaint and the trial court's reliance on *Caron* v. *Adams*, supra, 33 Conn. App. 688, we conclude that the trial court improperly submitted the case to the jury on a theory of simple negligence.[4]

## II

The defendant next claims that the trial court abused its discretion by failing to grant his motion to set aside the verdict. He argues that, because the plaintiff was precluded from presenting expert witnesses, which resulted in her failure to establish the elements of medical malpractice, and because the trial court improperly submitted the case to the jury on a theory of simple negligence, the jury could not reasonably and legally have reached its verdict. In contrast, the plaintiff argues that she was able to adduce sufficient evidence from the defendant's experts, including the defendant himself, to establish the requisite elements. We disagree with the plaintiff.

"Our review of a trial court's decision on a motion to set aside a verdict and to direct a verdict in favor of the movant is well established. In considering a motion

---

[4] The plaintiff argues that the verdict in this case must stand under the general verdict rule because neither side requested interrogatories. "The general verdict rule operates to prevent an appellate court from disturbing a verdict that may have been reached under a cloud of error, but is nonetheless valid because the jury may have taken an untainted route in reaching its verdict." *Sady* v. *Liberty Mutual Ins. Co.*, 29 Conn. App. 533, 558, 616 A.2d 819 (1992). Here, the plaintiff's allegations did not support a claim of simple negligence. As discussed in part II, the lack of expert testimony is fatal to the remaining allegations, and, therefore, the jury could not have reached its verdict by any untainted route. Thus, the general verdict rule does not apply.

to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. . . . In reviewing the action of the trial court in denying a motion to set aside the verdict, [i]t is the function of this court to determine whether the trial court abused its discretion. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . If, on the evidence, the jury could reasonably have decided as [it] did, [the reviewing court] will not find error in the trial court's acceptance of the verdict. . . . However, it is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . ." (Citations omitted; internal quotation marks omitted.) *Boyce* v. *Allstate Ins. Co.*, 236 Conn. 375, 381, 673 A.2d 77 (1996).

"In order to prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . To prove that a [podiatrist] has breached the legally required standard of care, the plaintiff must offer some evidence that the conduct of the [podiatrist] was negligent. . . . [T]estimony of an expert witness is necessary to establish both the standard of proper professional skill or care on the part of a [podiatrist] . . . and that the defendant failed to conform to that standard of care." (Citations omitted; internal quotation marks omitted.) *Keans* v. *Bocciarelli*, 35 Conn. App. 239, 241–42, 645 A.2d 1029, cert. denied, 231 Conn. 934, 650 A.2d 172 (1994).

Even if we assume, arguendo, that the plaintiff is correct in her assertion that she was able to adduce enough testimony from the defendant and the defendant's experts regarding the requisite standard of care

concerning malpractice and lack of informed consent, our careful review of the record reveals that none of those witnesses testified that the defendant deviated from that standard of care in his care and treatment of the plaintiff.[5] Likewise, there is no expert testimony that the plaintiff's alleged damages were causally related to the surgeries performed by the defendant. Consequently, the plaintiff did not sustain her burden of proof against the defendant regarding her claims of malpractice and lack of informed consent.

Because this case should not have been submitted to the jury on a theory of simple negligence, and because the plaintiff failed to adduce any expert testimony to establish the requisite elements of medical malpractice, the jury could not reasonably have decided as it did. We conclude, therefore, that the trial court abused its discretion in denying the defendant's motion to set aside the verdict. See *Gemme* v. *Goldberg*, 31 Conn. App. 527, 533, 626 A.2d 318 (1993).

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

---

[5] Moreover, at oral argument the plaintiff conceded that there was no expert testimony in the record adduced from either the defendant himself or from the defendant's expert witnesses tending to prove that the defendant violated the standard of care for podiatric surgeons in the community.