[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 128, # 133)
On December 17, 1994, defendant, Mobile Medical Testing Services, Inc., (Mobile Medical), a Connecticut corporation, entered into a contract with the City of Yonkers, New York. Under the terms of the contract, Mobile Medical agreed to provide physical examinations to firefighters employed by the Yonkers' fire department and determine CT Page 12932 whether the firefighters were fit for duty. On September 11, 1995, Joseph Dugan,[1] was examined by Mobile Medical. On November 4, 1995, Dugan suffered a heart attack while at his home in Connecticut.
On December 30, 1997, the plaintiffs, Joseph and Patricia Dugan, filed a two count substitute complaint against the defendants, Mobile Medical and its president, Richard Weitman, M.D. Count one alleges that the defendants were negligent because they failed to notify Dugan that he was at an extreme risk of a heart attack based on the results of his electrocardiogram until a few days after he suffered a heart attack. In count two, Patricia Dugan seeks relief for loss of Dugan's consortium.
On March 15, 2000, the defendants filed a motion for summary judgment on the ground there is no material issue of fact as to whether a physician-patient relationship existed between Dugan and the defendants. The defendants argue that an action for medical malpractice cannot be maintained in the absence of a physician-patient relationship as a matter of law. On October 26, 2000, the plaintiffs filed a memorandum in opposition to the motion for summary judgment. Oral argument was heard on the motion on May 14, 2001.
The defendants argue that New York substantiative law applies to this action. The plaintiff argues that Connecticut substantiative law applies to this action. Prior to deciding the merits of the defendants' motion for summary judgment, this court must, therefore, determine whether New York or Connecticut substantive law should be applied. This legal situation arises because the plaintiffs' are Connecticut residents and Dugan was examined while he was employed by the city of Yonkers in New York. Both parties have briefed the choice of laws issues and this court may properly address this issue when deciding a motion for summary judgment. See Maldonado v. Lannefrangue Superior Court, judicial district of New Haven at Meriden, Docket No. 257480 (May 27, 1998, Dunnell, J.)
("A motion for summary judgment is an appropriate motion to resolve a choice of law issue.")
I. Conflict of laws analysis
"It is only after a determination is made that there is indeed an actual conflict between the laws of the particular jurisdictions that the interests of the respective jurisdictions are analyzed." Grossman v. ClubMed Sales, Inc., 640 A.2d 1194, 1198 (N.J.Super.Ct.App.Div. 1994);Jacobs v. Yale University, Superior Court, judicial district of New Haven, Docket No. 277513 (September 21, 2000, Blue, J.). A "false conflict" of laws is said to exist "where application of the laws of two or more jurisdictions with contacts to the litigation reach identical results, thus eliminating any potential conflict of laws." O'Connor v.CT Page 12933O'Connor, 201 Conn. 632, 657 n. 18, 519 A.2d 13 (1986). "In such a case, the case ought to be decided under the law that is common to both states." (Internal quotation marks omitted.) Boston Hides Furs, Ltd.v. Sumitomo Bank Ltd., 870 F. Sup. 1153, 1159 (D.Mass. 1994). Where "neither party identifies a relevant conflict between these States' laws, and the appropriate legal analysis is essentially equivalent under both, the court will apply . . . the law of the forum state, to the extent it is common to both [states]." Id. As the plaintiffs argue that they have stated alternative causes of action, one for general negligence and one for medical malpractice, this court will review the substantive law governing medical malpractice and general negligence in both states to determine whether there is a conflict of law. If there is no conflict, the court will apply Connecticut substantiative law.
Both New York and Connecticut require that the plaintiff prove the same elements in order to recover for medical malpractice. Amsler v.Verrilli, 501 N.Y.S.2d 411, 412 (N.Y.App.Div. 1986); Bloom v. City ofNew York, 609 N.Y.S.2d 45, 45 (N.Y.App.Div. 1994) (to recover for medical malpractice, the plaintiff must prove a deviation from the standard of care and that deviation proximately caused the plaintiffs injuries); Kunst v. Vitale, 42 Conn. App. 528, 536, 680 A.2d 339 (1996) (to recover for medical malpractice, the plaintiff must prove standard of care, deviation from the standard of care and proximate causation). General Statutes § 52-184c (a) (standard of care for a health care provider is the level of care recognized by similar health care providers).
This does not, however, end the inquiry, the defendants argue that New York substantiative law bars the plaintiffs recovery because the plaintiffs must prove the existence of a physician-patient relationship in order to recover for medical malpractice and the plaintiffs cannot prove the existence of a physician-patient relationship. The plaintiffs argues that Connecticut substantiative law allows for recovery, in medical malpractice actions, in the absence of a physician-patient relationship.
As the defendants point out, New York law provides that a physician has no duty to a plaintiff in the absence of a physician-patient relationship. Lee v. City of New York, 560 N.Y.2d 700, 702
(N.Y.App.Div. 1990). New York Law also provides, with minor exceptions, that when a physician is employed to examine a patient by the patients employer to insure the patients physical fitness for a job, the examination is solely for the benefit of the employer and no physician-patient relationship exist. Id.
An analysis of Connecticut law reveals that it has relied on Lee v.City of New York and adopted the New York legal standard as the CT Page 12934 Connecticut standard. Cowan v. Warner-Lambert Company, Superior Court, judicial district of Ansonia-Milford at Ansonia, Docket No. 032564 (July 28, 1993, Jones, J.). In Cowan, the court stated: "A physician/patient relationship does not exist where [an] examination is conducted solely for the purpose . . . or on behalf of an employer; in order to establish that relationship, there must be something more that a mere examination . . .
The New York Court's have also held, however, that a physician, examining a patient solely for the benefit of the patient's employer, can be held liable if the physician affirmatively advices a patient as to a course of treatment during an examination and reliance on that medical advice harms the patient. See Lee v. City of New York, supra, 560 N.Y.S.2d 701-2. ("Generally, recovery for a physician's malpractice is predicated upon the existence of a physician-patient relationship. . . . [Unless] the physician affirmatively treats or affirmatively advises the [individual] as to treatment and the treatment actually causes further injury.") The reason for this exception is simple. Where the physician decides during the examination of a patient, at the patient's employer's request, to affirmatively advice the patient on the appropriate treatment for a physical disorder, the physician renders advice that he knows or should know that the patient may rely on. If the patient does so rely on the medical advice, a physician-patient relationship is created, because the physician has consented to provide medical advice to the patient and the patient has consented to following that treatment advice. Pokorny v. Shafer, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 528375 (February 28, 1994, Wagner, J.)
While our Connecticut Court's have not expressly stated that a physician may be liable to a patient he examines on behalf of the patient's employer, where the physician affinnatively treats or advices a patient on treatment during the course of his examination, as our court's have adopted the New York standard set forth in Lee v. City of New York,
supra, 560 N.Y.S.2d 701-2, and the Lee case provides that a physician may be liable for negligence which results from his affirmative treatment or advisement of a patient our court's would similarly allow recovery based on these circumstances.
Therefore, as the substantiative law involved in this case governing medical malpractice actions in New York and Connecticut is the same there is no conflict from the application of Connecticut substantiative law to this summary judgment motion if it is determined that the complaint alleges a medical malpractice action.
General negligence
CT Page 12935
A review of authorities from New York and Connecticut reveals that both states have also adopted the same requirements for a negligence cause of action. See Akins v. Glens Falls City School District, 53 N.Y.2d 325, 333
(1981) (the plaintiff must establish duty, breach of the duty, and injury to the plaintiff as a result thereof); see RK Constructors, Inc. v. FuscoCorp., 231 Conn. 381, 384, 650 A.2d 153 (1994) (plaintiff must establish "duty; breach of that duty; causation; and actual injury.") As both of these test require that the plaintiff establish a duty, breach of the duty and injury resulting from the breach of the duty in order to recover for negligence, there is no conflict of law created by the application of either New York or Connecticut substantiative law and, therefore, a "false conflict" exist.
As there is no conflict between the laws governing general negligence in New York and Connecticut, for the purposes of this summary judgment motion, this court will apply the laws of the forum jurisdiction to the action if the complaint is deemed to state a general negligence cause of action. See Boston Hides Furs. Ltd. v. Sumitomo Bank Ltd., supra,870 F. Sup. 1159.
II. The merits of the summary judgment motion.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miles v. Foley, 253 Conn. 381, 385,752 A.2d 503 (2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted.) Rivera v. Double ATransportation, Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999). "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,378, 260 A.2d 596 (1969). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Hertz Corp. v. Federal Ins. Co., 245 Conn. 374, 381,713 A.2d 820 (1998).
The defendants move for summary judgment on the ground there exist no material issue of fact as to whether a physician-patient relationship existed between Dugan and the defendants. The defendants argue that, in CT Page 12936 the absence of a physician-patient relationship, the defendants owed no duty to the plaintiffs and the plaintiffs may not pursue a cause of action for medical malpractice. Specifically, the defendants argue that because Dugan was examined to determine his fitness to perform a job, at the request and expense of his employer, no physician-patient relationship existed and the plaintiffs may not recover for medical malpractice as a matter of law.
The plaintiffs argue that they are not required to submit proof on the existence of a physician-patient relationship in order to show that the defendants breached a duty owed to the plaintiffs because the plaintiffs seek recovery based on the defendants' negligent failure to inform Dugan of his irregular test results. The plaintiffs argue that this failure to inform constitutes general negligence not medical malpractice. The plaintiffs argue that the defendants failure to inform Dugan of the true nature of the test results led Dugan to believe he was physically fit to continue his duties as a firefighter and these duties ultimately contributed to his heart attack.
"Whether the plaintiffs' cause of action is one for malpractice depends upon the definition of that word and the allegations of the complaint."Barnes v. Schlein, 192 Conn. 732, 735, 473 A.2d 1221 (1984). Malpractice has been defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." Santopietro v. New Haven, 239 Conn. 207,226, 682 A.2d 106 (1996). Medical malpractice claims involve "esoteric or uniquely medical" issues. Badriaian v. Elmcrest Psychiatric Institute,Inc., 6 Conn. App. 383, 387, 505 A.2d 741 (1986). Disclosure of medical risks is part of the standard of care for provision of medical services.Petriello v. Kalman, 215 Conn. 377, 385, 576 A.2d 474 (1990); Logan v.Greenwich Hospital Assn., 191 Conn. 282, 292, 465 A.2d 294 (1983).
Medical malpractice "presupposes some improper conduct in the treatment or operative skill [or] . . . the failure to exercise requisite medical skill. . . . From those definitions, we conclude that the relevant considerations in determining whether a claim sounds in medical malpractice are (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." Trimel v. Lawrence Memorial Hospital Rehabilitation Center,61 Conn. App. 353, 358, 764 A.2d 203, cert. granted, 255 Conn. 948,769 A.2d 64 (2001). CT Page 12937
The gravamen of the plaintiffs complaint is that the defendants failed to promptly notify Dugan his electrocardiogram results indicated a problem with his heart. The defendants' failure to inform Dugan of his test results is inextricably linked with the defendants' review of the test results and a determination that the results indicated a problem with Dugan's heart. Although the complaint does not sue a physician in his professional capacity, it does involve negligence which is specifically related to medical testing performed by a physician and it alleges that because of the defendants' negligence, Dugan did not seek medical treatment for his heart problem. The complaint does not, therefore, state a general negligence cause of action, but rather states a cause of action based on medical malpractice.
Assuming, however, that the complaint did state a cause of action for general negligence, the allegations and proof submitted fail to prove the existence of a duty to inform Dugan that his test results indicated a heart problem. The defendants were employed to examine Dugan on behalf of Dugan's employer. In this context, the defendants' sole duty to Dugan was to "exercise reasonable care and skill in their relationship with [him]."Porkornv v. Shafer, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 528375 (February 28, 1994, Wagner, J.)
The plaintiffs argue that the defendants' assumed a duty to wam Dugan that his test results indicated a heart problem because one of the defendants' physicians informed Dugan, immediately after his electrocardiogram that: "Everything looks fine, we only found one irregular heart beat." (9/5/00 Joseph Dugan Affidavit). This statement alone, if credited, is legally insufficient to impose a duty upon the defendants to do more than supply accurate test results to Dugan's employer. It would not have been reasonably foreseeable, based on this statement alone, that Dugan would have foregone seeking medical care from his normal physicians. Gazo v. Stamford, 255 Conn. 245, 250, 765 A.2d 505
(2001) (to show a legal duty the harm the plaintiff suffered must have been foreseeable).
As previously stated, in order to recover for medical malpractice, the plaintiffs must prove the existence of a physician-patient relationship. "The physician-patient relationship is a consensual one . . . [and] is created when the professional services of a physician are rendered to or accepted by another person for the purpose of medical or surgical treatment," Pokornv v. Shafer, supra, Superior Court, Docket No. 528375. Generally, no physician-patient relationship exist when a physician is retained to examine a patient solely on behalf of an employer and the physician has no duty to the patient but to use ordinary care during the course of the examination. Cowan v. Warner-Lambert Company, supra, CT Page 12938 Superior Court, Docket No. 032564. "An exception applies, however, where the physician affirmatively treats or affirmatively advises the employeeas to treatment and the treatment actually causes further injury." (Emphasis added.) Lee v. City of New York, supra, 560 N.Y.S.2d 701-2
The plaintiffs' argue that the defendants summary judgment motion should be denied because a physician-patient relationship was established immediately after the administration of the electrocardiogram when Dugan asked the defendants' physician, Gretchen Keefe, M.D., about the results of the test and Keefe told Dugan: "Everything looks fine, we only found one irregular heart beat." (9/5/00 Joseph Dugan Affidavit). Keefe's statement to Dugan does not rise to the level of affirmative treatment or advisement as to treatment as a matter of law. The statement does not contain any direction as to any medical treatment Dugan should seek or forego. The physician's statement did not tell Dugan that he would not suffer a heart attack or that he needed no further medical condition for his heart. Indeed, the statement indicated to Dugan that he had one irregular heart beat, but that everything else looked fine. It cannot be deemed that the physician intended to create a physician-patient relationship with Dugan when she told Dugan of the results of the test or that the physician would have reasonably foreseen that Dugan would rely on her statement to him and otherwise not seek treatment.
Conclusion
For reasons contained herein, the defendants' motion for summary judgment on counts one and two of the complaint is granted.
HOLDEN, J.