NORMA J. RICHMOND *v.* STEPHEN J. EBINGER
(AC 20657)

Lavery, C. J., and Landau and Flynn, Js.

Argued March 27—officially released September 25, 2001

*Christopher Carrozzella*, for the appellant (plaintiff).

*Louise C. LaMontagne*, for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Norma J. Richmond, appeals from the judgment of the trial court rendered following the denial of her motion to set aside the verdict and the denial of her motion for additur. The principal dispositive issue in this appeal is whether the court improperly refused to charge the jury as to the use of medical reports at trial,[1] as requested by the plaintiff, and whether the court, by charging as it did, violated General Statutes §§ 52-174 (b) and 52-216c. We reverse the judgment of the trial court and remand the case for a new trial.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. The plaintiff brought a negligence action seeking to recover damages for personal injuries arising from a March, 1995 motor vehicle accident with the defendant, Stephen J. Ebinger. The plaintiff alleged that the defendant was driving his vehicle directly ahead of her vehicle, with his left turn signal activated, when he suddenly turned to the right and collided with the plaintiff's vehicle. The plaintiff further alleged that she suffered physical injuries as a result of the collision. In a special

---

[1] The plaintiff also claims that the court (1) committed reversible error by including in its charge an illustrative example that confused and misled the jury, and (2) abused its discretion in denying her motion for additur.

defense, the defendant claimed that the plaintiff's comparative negligence contributed to her injuries.

The case was tried to a jury. Before the conclusion of the trial, the plaintiff submitted a request to charge grounded on § 52-174 (b) concerning the use of written medical reports in lieu of testimony from physicians. The jury returned a verdict in favor of the plaintiff and apportioned the negligence equally between the plaintiff and the defendant. The jury awarded the plaintiff $6300, including $4700 for economic damages and $1600 for noneconomic damages.

On January 26, 2000, the plaintiff filed a motion for additur, alleging that the jury's award of $1600 for noneconomic damages was manifestly inadequate. The court denied the motion, ruling that "although the verdict was low, certainly lower than the court would have awarded, it is not so low as to satisfy the standard for an additur."

The plaintiff also filed a motion to set aside the verdict on the following grounds: (1) the court's charge on the issue of the plaintiff's preexisting neck condition was incomplete and, thus, contrary to law; (2) the court confused the jury by failing to distinguish between the aggravation of a preexisting condition and a preexisting disability; (3) the court improperly charged the jury on contributory (comparative) negligence and the plaintiff's duty to use reasonable care; (4) the court improperly charged the jury regarding the use of medical reports and records at trial; and (5) the court improperly failed to charge on the defendant's failure to maintain control of a motor vehicle. The court denied the motion, and this appeal followed.

We first review certain legal principles that govern our review. We have stated that "[a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. A

refusal to charge in the exact words of a request [however] will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 234, 733 A.2d 156 (1999).

"A charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case." (Internal quotation marks omitted.) *Sleavin* v. *Greenwich Gynecology & Obstetrics, P.C.*, 6 Conn. App. 340, 343, 505 A.2d 436, cert. denied, 199 Conn. 807, 508 A.2d 32 (1986). "The test is whether the charge as a whole fairly presented the case to the jury so that no injustice was done." ( Internal quotation marks omitted.) Id., 343–44. "In reviewing a challenge to jury instructions, we must examine the charge in its entirety. . . . While the instructions need not be exhaustive, perfect or technically accurate, *they must be correct in law*, adapted to the issues and sufficient for the guidance of the jury." (Emphasis added; internal quotation marks omitted.) *State* v. *Stevenson*, 53 Conn. App. 551, 573, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999).

The plaintiff claims that the court improperly refused to charge the jury on the use of medical reports at trial, as she requested, and that the court, by charging as it did, violated §§ 52-174 (b) and 52-216c. We agree.

In this case, the plaintiff introduced into evidence numerous medical records, in lieu of testimony, from her treating physicians. She also submitted a written request to charge as follows: "In this case, the plaintiff has introduced into evidence numerous medical records from her treating physicians. By authority of state law, medical records may be introduced by any party without the requirement that the treating physician come to court to present this information by live

testimony. There is nothing wrong with doing that. These reports are admitted into evidence as a business entry, which is one of the many exceptions to the hearsay rule, and it is presumed that such medical reports were made in the ordinary course of business. The plaintiff is not required to call as a witness all of the doctors who wrote these reports and this should not be held against the plaintiff that she did not do so. General Statutes § 52-174 (b)."

The court did not charge the jury in accordance with the plaintiff's request. Instead, it charged the jury as follows: "As you've seen, introducing medical reports, instead of . . . testimony is permitted . . . testimony by the doctor is not always required. No matter how certain any particular witness, including an expert may be, in his or her opinion, however, that opinion is subject to your review. It is, in no way, binding on you. No witness, including an expert witness, can decide this case for you. In weighing and considering the evidence of expert witnesses, you're to apply the same rules that you apply to any witness insofar as it relates to the witness' interest, bias or prejudice, partiality toward one party or against the other, frankness, and candor and so forth. *Although these things, obviously, can be difficult to determine from a piece of paper rather than a . . . witness testifying*." (Emphasis added.) The plaintiff properly took exception to this portion of the charge, preserving the issue for appellate review.

We first review § 52-216c as it applies to the failure to call a witness at trial. Section 52-216c provides in relevant part: "No court in the trial of a civil action may instruct the jury that an inference unfavorable to any party's cause may be drawn from the failure of any party to call a witness at such trial. . . ."

Section 52-216c must be read together with § 52-174 (b), which provides in relevant part: "In all actions for

the recovery of damages for personal injuries . . . pending on October 1, 1977, or brought thereafter . . . any party offering in evidence a signed report and bill for treatment of any treating physician . . . may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician . . . and that the report and bill were made in the ordinary course of business. *The use of any such report or bill in lieu of the testimony of such treating physician . . . shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician . . . .*" (Emphasis added.)

The purpose of § 52-174 (b) was to expedite and streamline the trial of personal injury cases by allowing the use of written reports from medical practitioners in lieu of their testimony. The General Assembly recognized that it is not always possible to obtain testimony without undue trial delay because of conflicting commitments that physicians and other treating professionals have to their patients. Because the nonoffering party has the right to call the medical expert to the witness stand if he or she wants, the rights to cross-examination are protected. No adverse inference is permitted, however, so that the use of the statute is not discouraged.

Here, the court did not read the pertinent portions of either statute or otherwise instruct the jury that the use of signed written reports and bills in lieu of the physicians' testimony could not give rise to an adverse inference or be held against the plaintiff, as the plaintiff properly requested. The court did choose to comment, however, that judging a witness' interest, bias, prejudice, partiality, frankness and candor "can be difficult to determine from a piece of paper rather than a . . . witness testifying." We agree with the plaintiff that the likely effect of that last comment, when coupled with the failure to instruct against adverse inferences as to

the two treating physicians whose medical reports were admitted into evidence in her behalf, invited the jury to do precisely what the statutes were designed to prohibit, namely, to draw a negative inference against the party relying on such written reports. Thus, we find the court's charge to be improper in this case.[2]

Our inquiry does not end with our conclusion that the charge was improper. We must next determine

[2] We respectfully disagree with the view expressed in the dissent that the general verdict rule applies in this case and, therefore, any claimed error is not reviewable. First, the jury did not render a general verdict in the present case. The jury made separate special findings on the verdict form itself, including that (1) the plaintiff was 50 percent negligent, (2) the defendant was 50 percent negligent, (3) $4700 constituted proper economic damages and (4) $1600 constituted proper noneconomic damages.

In *Caruso* v. *Quickie Cab Co.*, 48 Conn. App. 459, 709 A.2d 1154 (1998), which the dissent cites, there was a general verdict, but only because the parties stipulated that the jury award would be a lump sum without a breakdown as to economic and noneconomic damages. Second, even if the special findings were deemed to constitute a general verdict, this case does not fit into any of the five scenarios, as set forth in *Curry* v. *Burns*, 225 Conn. 782, 801, 626 A.2d 719 (1993), in which the rule applies. In that case, our Supreme Court limited the "application of the rule to the following five scenarios: (1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a special defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." Id.

Of those, only the fourth scenario provides a possible fit because the defendant denied the allegations of negligence in the plaintiff's complaint and pleaded the special defense of contributory negligence. Analysis reveals, however, that even as to the fourth scenario, in determining causal negligence, the jury was not making the factually and legally distinct judgment that *Curry* requires for the rule to apply. "[T]he application of the general verdict rule . . . does not depend on the niceties of pleading but on the distinctness and severability of the claims and defenses raised at trial. . . . [I]t is the distinctness of the defenses raised, and not the form of the pleading, that is the decisive test governing the applicability of the general verdict rule." (Citation omitted; internal quotation marks omitted.) Id., 787–88. Furthermore, because the jury found both that the defendant was negligent as pleaded in the complaint and that the plaintiff was not barred from recovery under the special defense because she was not more than 50 percent causally negligent in bringing about her own injuries and damages, application of

whether the improper instruction was harmful because it would have been likely to affect the jury's verdict. *Remington* v. *Aetna Casualty & Surety Co.*, 240 Conn. 309, 316, 692 A.2d 399 (1997); *Blancato* v. *Randino*, 33 Conn. App. 44, 49, 632 A.2d 1144, cert. denied, 228 Conn. 916, 636 A.2d 846 (1993). A careful review of the charge to the jury reveals that the court's remark invited an adverse inference. That is particularly so in light of the judge's statement that it might be more difficult to evaluate the experts' opinions because they were on pieces of paper, and the fact that the entire medical evidence as to permanency of the injury came in through those reports. Since we presume that the jury followed the court's instructions; *State* v. *Rivera*, 61 Conn. App. 763, 773, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001); *State* v. *Mills*, 57 Conn. App. 202, 212, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000); we conclude that the plaintiff has suffered an injustice.

Because the comment that the trial judge made about the difficulty of the use of paper reports related to the credit to be given witnesses, it is worth noting that the plaintiff's physicians and the physician retained by the defendant, all of whose opinions were before the jury in the form of signed, written reports, do not dispute the nature of the plaintiff's injuries or that those injuries resulted from the collision. The only difference in the medical reports relates to the extent of the plaintiff's disabilities.[3] According to the three medical reports, the

the rule would not provide an error free alternate route to sustaining the verdict where a second route in the pleadings had been marred by error.

[3] Both of the plaintiff's physicians, in their written reports, assigned a 5 percent permanent, partial disability to the plaintiff's back. The physician retained by the defendant made an independent report, assigning a 7 percent permanent, partial disability to the plaintiff's back, 3 percent due to preexisting degenerative changes and 4 percent due to the 1995 accident.

As for the extent of injury to the plaintiff's neck, one of the plaintiff's physicians assigned a 10 percent permanent, partial disability due to a 1993 accident. Of the two physicians who examined the plaintiff's neck following the 1995 accident, one physician assigned a 5 percent disability, and the

plaintiff, at the very least, has a 4 or 5 percent disability to her back and a 3 percent disability to her neck. Additionally, the plaintiff had at the time of trial a life expectancy of thirty-four years. Because the jury awarded only $1600 for noneconomic damages,[4] including pain and suffering,[5] we cannot find that the court's failure to instruct against adverse inferences was harmless. Because our resolution of the issue concerning the court's charge is dispositive of the plaintiff's appeal, we do not address the plaintiff's other claims. There are cases, and this is one, where improper instructions as to damages should be reviewed because the jury rendered a verdict for the plaintiff, not for the defendant. Because it reached the issue of damages, the jury could not have reached its verdict by any means other than one affected by improper jury instructions, the likely effect of which was to diminish the award to the plaintiff.

The judgment is reversed and the case is remanded for a new trial.

In this opinion LAVERY, C. J., concurred.

LANDAU, J., dissenting. I respectfully dissent from the majority opinion because I believe that the size of the verdict cannot be used to determine whether the

---

other assigned a 7 percent to 10 percent disability. The physician for the defendant assigned an additional 3 percent permanent, partial disability of her neck.

[4] As previously stated, the court itself noted, in its denial of the plaintiff's motion for additur, that "the verdict was low, certainly lower than the court would have awarded . . . ."

[5] We are able to deduce that the jury awarded noneconomic damages for pain because it awarded the entire portion for which the defendant was proportionately responsible as to the bill of David Clukey, a chiropractor who can only treat pain, and the jury could only have done so because it found that the defendant's negligence caused pain that the plaintiff endured and for which she needed to be treated.

claimed improper jury instruction was prejudicial to the plaintiff.[1]

The following procedural fact is critical to a resolution of the plaintiff's claim, which is essentially that the jury did not award her enough damages. The foreperson completed the jury form, indicating that the parties were equally responsible for the accident and awarding the plaintiff $4700 for economic damages and $1600 for noneconomic damages. The total verdict was $6300. No interrogatories were submitted to the jury to elucidate its verdict. The jury's awards with respect to economic and noneconomic damages are therefore the result of a general verdict. See *Barrows* v. *J.C. Penney Co.*, 58 Conn. App. 225, 229, 753 A.2d 404, cert. denied, 254 Conn. 925, 761 A.2d 751 (2000).

"Where there is a general verdict and no breakdown of the components of the verdict, it would be error to set it aside. *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 746, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1325 (1997). The rendering of a general verdict coupled with the absence of interrogatories, [makes] it impossible for the trial court or this court to determine what factors the jury considered in making its award. Id. We cannot speculate as to how the jury reached its figure. *Caruso* v. *Quickie Cab Co.*, 48 Conn. App. 459, 462, 709 A.2d 1154 (1998)." (Internal quotation marks omitted.) *Barrows* v. *J.C. Penney Co.*, supra, 58 Conn. App. 229.

Here, the absence of any explanation of the verdict clouds the basis of the jury's economic damages award,

---

[1] I take no position as to the correctness of the court's instruction that "[i]n weighing and considering the evidence of expert witnesses, you're to apply the same rules that you apply to any witness insofar as it relates to the witness' interest, bias or prejudice, partiality toward one party or against the other, frankness, and candor and so forth. Although these things, obviously, can be difficult to determine from a piece of paper rather than a . . . witness testifying." In this situation, however, I note that the instruction applied equally to the opinions of both the plaintiff's and the defendant's medical experts.

which is only a fraction of the medical special damages that the plaintiff had claimed,[2] as well as its noneconomic damages award. The plaintiff's argument before this court is that, in view of the court's charge, the jury drew an adverse inference about the opinions of various medical experts because the experts did not testify. In particular, the plaintiff scrutinizes the permanent, partial disability ratings assigned by the various experts and makes assumptions about the verdict in that regard. The plaintiff, however, has not demonstrated how the jury viewed the expert opinions. In fact, there is no way to parse the jury's verdict between past and future medical expenses, let alone a permanent, partial disability to any part of her body. "The general verdict rule operates to prevent an appellate court from disturbing a verdict that may have been reached under a cloud of error, but is nonetheless valid because the jury may have taken an untainted route in reaching its verdict." (Internal quotation marks omitted.) *Kunst* v. *Vitale*, 42 Conn. App. 528, 535 n.4, 680 A.2d 339 (1996).

"The amount of a damage award is a matter peculiarly within the province of the trier of fact . . . ." (Internal quotation marks omitted.) *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 183–84, 646 A.2d 195 (1994). The court should set aside a verdict where "circumstances justify a suspicion that the jury was influenced by prejudice, corruption or partiality." *Rejouis* v. *Greenwich Taxi, Inc.*, 57 Conn. App. 778, 787, 750 A.2d 501, cert. denied, 254 Conn. 906, 755 A.2d 882 (2000). "The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corrup-

[2] The plaintiff submitted evidence that her medical special damages exceeded $12,000.

tion." (Internal quotation marks omitted.) *Mather* v. *Griffin Hospital*, 207 Conn. 125, 139, 540 A.2d 666 (1988).

There is nothing shocking about the size of the verdict here. Furthermore, appellate courts have always ascribed great weight to a trial court's decision not to set aside the verdict or to award an additur. *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 465, 476, 760 A.2d 117 (2000), aff'd, 257 Conn. 359, 777 A.2d 681 (2001). In denying the plaintiff's motion for additur, the court stated that the verdict was not low enough to satisfy the standard for additur, although it would have awarded the plaintiff more damages. The court's gratuitous comment with respect to the size of the verdict it would have awarded is meaningless in view of the long-standing rule that the court does not sit as the seventh juror. See *Purzycki* v. *Fairfield*, 44 Conn. App. 359, 362, 689 A.2d 504 (1997), rev'd on other grounds, 244 Conn. 101, 708 A.2d 937 (1998). "Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court be that a different result should have been reached." (Internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 478.

It is beyond question that the jury is the arbiter of fact and credibility. *Stuart* v. *Stuttig*, 63 Conn. App. 222, 226, 772 A.2d 778 (2001). At trial in this case, the parties contested the plaintiff's injuries, their proximate cause and their severity. The jury had before it the opinions of all of the medical expert witnesses. It was for the jury to believe all, some or none of their opinions. *Pickles* v. *Goldberg*, 38 Conn. App. 322, 325, 660 A.2d 374 (1995). The plaintiff attempted to convince the jury

that she sustained significant, permanent injuries as a result of the motor vehicle accident with the defendant. On the other hand, the defendant, in view of his belief that the accident was relatively minor, attempted to convince the jury that the plaintiff exaggerated her injuries and sought more treatment than was necessary. There were many factors beyond the opinions of the experts that the jury had to consider, including the testimony of the parties, demonstrative evidence and the arguments of counsel. No one outside the jury knows how or why it rendered its verdict. See *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 344, 430 A.2d 1 (1980). Because the verdict fell within the necessarily uncertain limits of fair, just and reasonable damages, this court should not sit as a seventh juror and reverse the judgment.

For these reasons, I would affirm the judgment.